**IN THE COURT OF APPEALS OF IOWA**

No. 19-0635
Filed July 3, 2019

**IN THE INTEREST OF K.J. and K.S.,**
**Minor Children,**

**A.S., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Plymouth County, Andrew Smith,

District Associate Judge.


        A mother appeals the termination of her parental rights.  **AFFIRMED.**


        Jessica R. Noll of Deck Law PLC, Sioux City, for appellant mother.

        Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant

Attorney General, for appellee State.

        Meret Thali of Juvenile Law Center, Sioux City, attorney and guardian ad

litem for the children.

        Scott L. Bixenman of Murphy, Collins, Bixenman & McGill, P.L.C., Le Mars,

for appellee father of K.J.

        Kevin J. Huyser, of Rensink, Pluim, Vogel & Huyser, Orange City, for

appellee father of K.S.


        Considered by Potterfield, P.J., and Doyle and May, JJ.

**DOYLE, Judge.**

A.S. appeals from an order terminating her parental rights in her children, K.J. and K.S.[1]  She asserts the State failed to prove the grounds for termination found by the juvenile court and termination is not in the children's best interests. She also contends the juvenile court should have granted her six more months to work toward reunification.  Our review is de novo.  *See In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019).

Under Iowa Code chapter 232 (2018), parental rights may be terminated if the following three conditions are true: (1) a "ground for termination under section 232.116(1) has been established" by clear and convincing evidence, (2) "the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights," and (3) none of the "exceptions in section 232.116(3) apply to preclude termination of parental rights."  *In re A.S.*, 906 N.W.2d 467, 472-73 (Iowa 2018).  The juvenile court can also defer termination of parental rights if "specific factors, conditions, or expected behavioral changes" lead the court to "determin[e] that the need for removal of the child from the child's home will no longer exist at the end of [an] additional six-month period."  Iowa Code § 232.104(2)(b).  In determining whether termination of parental rights is in a child's best interests, we give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  *Id.* § 232.116(2).

---

[1] G.J. is the father of K.J., born in 2013, and A.M.S. is the father of K.S., born in 2016. Each child is now in that child's father's care; neither father's rights are at issue here.

The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1) paragraphs (d), (i), (*l*) for both children, (f) for K.J., and (h) for K.S. "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus on paragraphs (f) and (h), which allow the court to terminate parental rights if a child of a specified age has been adjudicated child in need of assistance, has been out of the parent's custody for the requisite time, and cannot be returned to the parent at present without continued risk of adjudicatory harm.[2] Here, the mother does not dispute the State's proof concerning the elements of that section. Rather, because the children are in their fathers' custody, she argues the juvenile court should not have terminated her parental rights.

Placement of the child in one parent's home does not preclude termination of the other parent's rights. *See In re N.M.*, 491 N.W.2d 153, 155 (Iowa 1992); *see also In re D.E.D.*, 476 N.W.2d 737, 740 (Iowa Ct. App. 1991) (affirming the termination of a mother's parental rights but reversing and remanding as to the father, who had not received adequate notice of the grounds for termination), *overruled on other grounds by In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). Though termination of parental rights "is an outcome of last resort," *N.M.*, 491 N.W.2d at 155, "our fundamental concern is the best interests of the child." *In re M.D.*, 921

---

[2] Paragraph (f) applies to children four years old or older (here, K.J.) who have been out of parental custody for at least twelve of the last eighteen months and any trial period at home has been less than thirty days. Paragraph (h) applies to children three years old or younger (here, K.S.) who have been out of parental custody for at least six of the last twelve months and any trial period at home has been less than thirty days.

N.W.2d 229, 232 (Iowa 2018). We recognize the children are in the custody of their respective fathers, who can keep the children safe. But the mother's argument fails to consider the harm the children have suffered because of the long-term, ongoing instability in their lives. *See N.M.*, 491 N.W.2d at 155. Considering the children's safety, the best placement for furthering the long-term nurturing and growth of the children, and the children's physical, mental, and emotional condition and needs, we find termination of the mother's parental rights is in the children's best interests even though each child is in the custody of his and her father, and we cannot conclude the need for removal will no longer exist at the end of six more-month period.

When this case began in October 2017, there were concerns about the mother's ability to parent the children safely. The application for removal reported that law enforcement officials had been called to the mother's residence, and when officers arrived,

> they found [K.S.] asleep in her bed . . . in the care of [a man] that was found sleeping on the couch. [The man] told Officers that he did not know where [the mother] was nor was he aware that [K.S.] was in her crib. There were dog feces on the living room floor and for reasons unknown a random gallon of milk in the bathroom.
> [The man] . . . did not know [the mother] had left, what time she left or her current whereabouts. . . . [The man] stated that [the mother] is using Methamphetamine.

At the termination-of-parental-rights hearing held in March 2019, the mother testified she had known the person sleeping on her couch "[f]or about a day" when she left K.S. alone in his care and she had no concerns about leaving her children with him. Unlike the report, the mother testified that she not only told the man where she was going, the man had denied making those statements.

After the report, the mother was asked to submit to drug testing, and both her hair and urine samples tested positive for methamphetamine. The children's hair-stat tests were also positive for methamphetamine. At the termination-of-parental-rights hearing, the mother denied the urinalysis test's accuracy and could not explain why the children's hair would have tested positive for methamphetamine. She still maintained she had only used once—sometime in the summer of 2017—and that was why her hair tested positive.

Throughout the case, the mother's progress and participation was sporadic. She successfully completed an inpatient substance-abuse treatment program in about August 2018, but she relapsed soon after. She had visits with the children, but she had a difficult time being consistent with visits, arriving late or sometimes not at all. K.J. had a difficult time adjusting and acted out after his interactions with the mother. He was very upset when his mother missed their visits or phone calls. K.S. also had setbacks after visits with the mother.

Then, in November 2018—after the termination-of-parental-rights petition had been filed—the mother had another run-in with law enforcement. She was a passenger in a vehicle that was stopped, and the driver asked her to swap places because the driver did not have a license. Even though the mother also did not have a valid license and she was involved in termination-of-parental-rights proceedings, she switched places and told the officer she was the driver. A canine unit sniffed the car and alerted upon an area where the mother's purse was located. According to the police report, her purse was searched and a separate bag was found in it containing "many needles/syringes, clear plastic baggies that were empty, a couple of containers that looked to contain a crystal like substance,

a spoon that also seemed to contain a crystal like substance." Another small plastic bag containing a crystal-like substance was found under the passenger's seat. The mother and the driver both denied having any knowledge of either bag's presence. Both were arrested, and, at the jail, the mother was strip searched. A "crystal like substance" was found on the mother's person—either in her bra or her armpit. At the termination-of-parental-rights hearing, the mother testified that the police report was wrong—the bag of needles and syringes were not found in her purse but near her purse. She testified the substance found on her person at the jail was not hers; she claimed it belonged to the vehicle's driver and he had asked her to hold it.

At the termination-of-parental-rights hearing, the mother testified she had been sober since that arrest. Her substance-abuse therapist reported the mother "did not attend treatment in the month of December 2018" and was to be "unsuccessfully discharged." The mother testified she had she had stopped attending substance-abuse treatment because of her employment. The mother testified she had restarted services in January 2019. She admitted she had missed a few appointments since restarting therapy, but she testified there were weather and car issues that prevented her from attending.

Ultimately, the mother's testimony is not credible. Even if she last used in November 2018, she was still unwilling or unable to acknowledge her earlier substance abuse at the time of the March 2019 termination-of-parental-rights hearing. This is a critical step toward recovery; she cannot move forward until she fully admits her issues. Until she admits her usage, commits to sobriety, and stops associating with other substance abusers, she cannot safely parent her children.

We do not doubt her love for her children, but more than a year of services have been offered to her, and she has not shown she can put her children's needs before her own.

The mother asks for additional time to work towards reunification. As the guardian ad litem so aptly remarked at the end of the trial: "And it's the simple fact that children are not equipped with pause buttons." We have often made the same observation. *See, e.g.*, *In re N.C.*, No. 17-0120, 2017 WL 1088111, at *2 (Iowa Ct. App. Mar. 22, 2017). "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re D.A.*, 506 N.W.2d 478, 479 (Iowa Ct. App. 1993). "[A]t some point, the rights and needs of the children rise above the rights and needs of the parent." *In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009). We have reached that point. Given the anxiety her children have already endured, they should not have to wait any longer.

The State established the grounds for termination under paragraphs (f) and (h) of Iowa Code section 232.116(1). Upon our de novo review of the record, we find termination of the mother's parental rights is in the children's best interests, even though the children are in the fathers' care and doing well there. Under the facts and circumstances of this case, there is no reason to apply any of the permissive factors set out in section 232.116(3), nor is additional time under section 232.104(2)(b) justified. So we affirm the order terminating the mother's parental rights.

**AFFIRMED.**