**IN THE COURT OF APPEALS OF IOWA**

No. 19-0804
Filed July 24, 2019

**IN THE INTEREST OF D.D.,**
**Minor Child,**

**J.D., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Glenn E. Pille, Judge.


        A father appeals the termination of his parental rights to his child.
**AFFIRMED.**



        Teresa M. Pope of Branstad & Olson Law Office, Des Moines, for appellant father.

        Thomas J. Miller, Attorney General, and Anna T. Stoeffler, Assistant Attorney General, for appellee State.

        Erin Romar of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.


        Considered by Vaitheswaran, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

A father appeals the termination of his parental rights to his child. He argues the State failed to prove reasonable efforts were provided for reunification. He also asserts he should have been given additional time for reunification and the court should have permitted him to reopen the record after he filed his notice of appeal. Upon our review, we affirm.

### I. Background Facts and Proceedings.

J.D. is the father and M.K. is the mother of D.D., born in 2015. In March 2018, law-enforcement officers executed a search warrant at the family's residence related to reports that the father was selling drugs from the home. Agents found drugs and other items indicative of trafficking, including loaded and used syringes accessible to the child. The parents were arrested and D.D. was removed from his parents' care. Later, the child's hair tested positive for amphetamines and methamphetamine and suggested both environmental exposure and ingestion. The father was incarcerated in June 2018. The child was placed in the care of the father's wife (the child's stepmother), A.D., from whom the father had been separated since 2012. The father and the stepmother have children together, who are not at issue here, and the stepmother did not allow the father to have unsupervised contact with their children "due to concerns about his substance use." The child has remained in his stepmother's care since his removal from his biological parents' care, and his stepmother wishes to adopt him. The stepmother began dissolution-of-marriage proceedings.

After the child was removed from the parents' care, he was evaluated by a therapist. The therapist's report reflected many concerns:

>When [the child] arrived for his assessment, he was displaying severe enough symptoms to meet criteria for PTSD. This child is very young for this diagnosis . . . . The child displayed irritability, anger, aggression, delayed speech, disrupted sleep, difficulty with overeating and a lack of eye contact and interactive play.

The child showed great strides after receiving a "collaboration of supports in speech therapy, occupational therapy, outpatient therapy, medication management, atten[tion] to his physical health, dental care, and above all, a safe, consistent, nurturing caregiver." The therapist observed that with the stepmother's "patience, and time, this child has shown great growth in healing and development."

Following a permanency hearing in October 2018, the juvenile court directed the State to begin termination-of-parental-rights proceedings. The court found that the mother's progress in the case was minimal and that the father was in prison and would not be eligible for parole until February 2019. The court also found the father had "not shown sustained sobriety or sustained avoidance of criminal behavior in the community" before his June 2018 incarceration, though the court noted the father was participating in a parenting program in prison. The court did not believe it was reasonably likely the child could be returned to either parent's care in six months. In January 2019, the State filed its petition seeking termination of the biological parents' parental rights.

A termination-of-parental-rights hearing took place in March 2019. At that time, the father was incarcerated at the Clarinda Correctional Facility serving an indeterminate twenty-year sentence. He participated in the hearing by phone. The father admitted he violated various prison rules while incarcerated, including possession of tattooing materials, having a new tattoo, and making hooch in his

cell. He anticipated he would still be paroled in July 2019. The father generally had weekly phone contact with the child unless he was in trouble for rule violations. The father testified that he should have been able to have had in-person visits at the prison with the child because he had met the criteria—halfway completion of the parenting program—but visitation forms required by the Department of Corrections were not completed. He conceded that he had appeared by phone at prior juvenile court hearings in October 2018 and June 2019 but had not requested the Iowa Department of Human Services (Department) to complete a required form. The father further explained the stepmother told him she had sent the visiting forms in but it was not until one week before the termination-of-parental-rights hearing that he was notified by his counselor that the forms had not been filled out. He also claimed the stepmother quit answering his calls three weeks before the termination-of-parental-rights hearing.

On the other hand, the stepmother testified that the father's testimony that she had stopped taking his calls was inaccurate, and she stated the last call she received from the father was ten days before the termination-of-parental-rights hearing. The stepmother also testified she had filled out the visitation forms. She stated that after the form was filled out, the father told her the child was denied visits. She further testified the father told her recently he could have visits and asked her to send in the form, and she did, but she sent it to the Clarinda facility where he was, not the Mount Pleasant facility, where it needed to be sent. She had recently sent the form to Mount Pleasant.

The Department's case worker testified and clarified the time line. She testified she received notice in November 2018 that the father was not eligible for

visits because of the father needing to complete the parenting program, but phone contact continued. Then, the case worker was advised at the end of 2018 by the stepmother that the father had been in trouble for making threats and was not allowed to have any contact—in person or by phone—for about forty days. In late January 2019, the father's attorney let the case worker know the father could have both types of contact and requested the appropriate paperwork be sent in and approved. She gave the stepmother the necessary paperwork at an early February 2019 home visit and asked the stepmother to complete it and send it in. The stepmother confirmed a week later that she had sent in the paperwork. It was not until the week before the termination-of-parental-rights hearing—after the father's attorney filed a motion requesting reasonable efforts—that the case worker learned the stepmother had sent the forms to the wrong facility. She asked the stepmother to resend the forms immediately, and the stepmother stated she did. The case worker conceded she had not confirmed with the prison whether the father had been in trouble and had contact restricted, but she testified she did send emails and never received any response back. She testified that the father had four different counselors and they had been difficult to reach.

At the second day of the termination-of-parental-rights hearing, held in April 2019, the case worker gave the following update:

> On March 25, [the stepmother] was provided a letter from Clarinda stating that since [the child] was not [the stepmother's] biological child, she needed paperwork stating currently [the child was] in her care. [The stepmother and the case worker] spoke stating the court order, she was the current custodian, would suffice. [The stepmother] then got another letter received April 4, 2019, that her visitor application was denied due to the visitor is a minor and offender has not completed treatment, and another statement saying

the victim or family member of the victim is in the current or past offense.

Following the hearing, the juvenile court entered its order terminating the parents' parental rights under the statutory grounds set out in paragraphs (e) and (h) of Iowa Code section 232.116(1) (2019). Among other things, the court noted:

> Much was made by the father during these proceedings that he was not provided visitation with his son while in prison. The court finds that particular request, made days before the termination proceeding, to be untimely. Additionally, while the court acknowledges there was some confusion and miscommunications regarding when and under what circumstances the prison would allow visitation, the court does not find a failure of the Department to make reasonable efforts to accomplish that goal. Additionally, it does not appear to this court that earlier visitation would have addressed the issues that brought this matter before the court. The father is still in prison. He was sentenced to serve an indeterminate twenty (20) year sentence on June 26, 2018. It is uncertain when he will be paroled although he hopes earlier than later. He cannot presently provide a stable and safe home for [the child]. Although he voices future actions on his part to address those issues, the child cannot continue to wait for that unknown future.

The father filed his notice of appeal. One day later, he filed a motion before the juvenile court to "reopen record to admit new evidence and motion to enlarge, amend and reconsider." The motion advised that the father had been granted parole one day after the termination-of-parental-rights order was entered, and was released on parole eight days later. The motion asserted "[i]t appear[ed] that significant weight was afforded to [the father's] incarceration at the time the order was entered and the new evidence would affect the court's termination decision," and requested the juvenile court reconsider its ruling and grant the father a six-month extension.

The juvenile court denied the motion. The court found it was without jurisdiction to rule on the motion because the father had filed a notice of appeal.

The court also stated that if it had jurisdiction to consider the motion's merits, the court

> would be hard pressed to find vacation of its order would be in the best interest of the child. Contrary to the father's inference that the court gave undue weight to the unknown future of when the father might be paroled, it was but one of many factors considered by the court in its ultimate order.

The father now appeals.[1]

## II. Standard of Review.

Our review is de novo. *See In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). On our de novo review, we give weight to the recommendations of the DHS case manager and the guardian ad litem. *See A.S.*, 906 N.W.2d at 477. We also give weight to the juvenile court's findings based on its ability to hear the live testimony of the witnesses. *See id.* We also take into account the child's young age, the time the father has already been out of contact with the child because of his criminal activity, and the length of the father's prison sentence.

## III. Discussion.

Under Iowa Code chapter 232, parental rights may be terminated if three conditions are true: (1) a "ground for termination under section 232.116(1) has been established" by clear and convincing evidence, (2) "the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights," and (3) none of the "exceptions in section 232.116(3) apply to preclude termination of parental rights."[2] *In re A.S.*, 906 N.W.2d 467, 472-73 (Iowa 2018).

---

[1] The mother's parental rights were also terminated and are not at issue in this appeal.

[2] We need not review any step of the three-step analysis the juvenile court must make in terminating a parent's parental rights if the step was not challenged by the parent on appeal. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010); *see also* Iowa Code § 232.116(1)-

The juvenile court can also defer termination of parental rights if "specific factors, conditions, or expected behavioral changes" lead the court to "determin[e] that the need for removal of the child from the child's home will no longer exist at the end of [an] additional six-month period." Iowa Code § 232.104(2)(b). In determining whether termination of parental rights is in a child's best interests, we give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* § 232.116(2).

On appeal, the father argues the State failed to prove reasonable efforts were provided for reunification. He also asserts he should have been given additional time for reunification and the court should have permitted him to reopen the record after he filed his notice of appeal.

### A. *Statutory Grounds and Reasonable Efforts*.

The juvenile court entered an order terminating the father's parental rights under Iowa Code section 232.116(1)(e) and (h). We need only find clear and convincing evidence supports one of the grounds for termination to affirm. *See In re T.S.*, 868 N.W.2d 425, 435 (Iowa Ct. App. 2015). The court may terminate parental rights under section 232.116(1)(h) on proof of the following:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

---

(3). Thus, we only address the father's challenge of the grounds for termination found by the juvenile court of the three-step analysis.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Here, the father does not directly challenge the juvenile court's finding that grounds for termination under paragraph (h) exist. Instead, he argues the State failed to provide reasonable efforts as required. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) ("The State must show reasonable efforts as part of its ultimate proof the child cannot be safely returned to the care of a parent."). "[R]easonable efforts" are "the efforts made to preserve and unify a family prior to the out-of-home placement of a child in foster care or to eliminate the need for removal of the child or make it possible for the child to safely return to the family's home." Iowa Code § 232.102(12). The concept of reasonable efforts "includes visitation designed to facilitate reunification while providing adequate protection for the child." *C.B.*, 611 N.W.2d at 493. Although the Department must "make every reasonable effort" to return a child to his home "as quickly as possible consistent with the best interests of the child," *id.* (quoting Iowa Code § 232.102(7)), the Department has to supply only those services that "are reasonable under the circumstances." *In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000) (citation omitted). "Whether visitation for an incarcerated parent should be ordered as a reasonable effort toward reunification when timely raised by the parent will depend on the circumstances of each case." *In re L.M.*, 904 N.W.2d 835, 840 n.9 (Iowa 2017).

Assuming without deciding the father's request for visitation reunification services was timely, based on a consideration of all of the relevant factors, we find the services offered to the father were reasonable under the circumstances. *See id.* ("The services required to be supplied to an incarcerated parent, as with any

other parent, are only those that are reasonable under the circumstances."). Although additional visits may have helped form a bond between the father and child, the benefit flowing from additional visits would not have outweighed the immediate needs of the child. *See In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996) ("[N]o evidence indicated increased visitation would help [the parent] respond to the various services offered by the DHS and assist her in becoming a better parent."). The father received phone contact with the child, and the Department tried to facilitate in-person visits but circumstances outside its control interfered in the process. The services provided by the Department were reasonable under the circumstances of the case.

We also agree with the juvenile court that in-person visitation would not have changed the outcome of this case. Here, the father was sentenced to twenty years in prison two months after the young child was removed from the parents' care. One of the convictions for which he was sentenced concerned an earlier, unrelated 2017 incident involving methamphetamine. The father's abuse of substances began years before the 2017 incident. Moreover, the child suffered greatly because of his parents' use of methamphetamine. He not only ingested it, he was suffering serious developmental delays and trauma related to the parents' substance abuse.

The father was incarcerated because of his own actions. The statutory time for reunification set out in paragraph (h) for this child's age—six months—had run by the time of the termination-of-parental-rights hearing, and though the father anticipated he would be released soon, it was beyond the time set out in the statute. Although the law requires a "full measure of patience with troubled parents

who attempt to remedy a lack of parenting skills," this patience has been built into the statutory scheme of chapter 232. *C.B.*, 611 N.W.2d at 494.

To be sure, the father was forced to abstain from substance use while he was in prison. But nothing in the record evidences the father will remain substance free once released, given his long history of substance abuse and his failure to remain sober after completing treatment prior to his imprisonment. His relationships with his other children did not stop his use of methamphetamine and his attempts to distribute it. He also was not a model inmate before the termination-of-parental-rights hearing. While parole may provide him an incentive for following the law, his child should not have to wait for permanency.

Once the grounds for termination have been proved, time is of the essence. *See In re A.C.*, 415 N.W.2d 609, 614 (Iowa 1987) ("It is unnecessary to take from the children's future any more than is demanded by statute. Stated otherwise, plans which extend the [statutory] period during which parents attempt to become adequate in parenting skills should be viewed with a sense of urgency."); *see also In re R.J.*, 436 N.W.2d 630, 636 (Iowa 1989) (noting that once the time for reunification set by the legislature has expired, "patience on behalf of the parent can quickly translate into intolerable hardship for the children"). We decline to take any more time from this child. Children are not equipped with pause buttons, and delaying permanency in favor of a parent conflicts with the child's best interests. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (noting children must not be deprived permanency on the hope that someday the parent will be able to provide a stable home); *A.C.*, 415 N.W.2d at 614 (noting that in considering whether to allow a parent additional time to remedy parenting deficiencies, the court should

"constantly bear in mind that, if the plan fails, all extended time must be subtracted from an already shortened life for the children in a better home"); *In re T.J.O.*, 527 N.W.2d 417, 422 (Iowa Ct. App. 1994) ("Children simply cannot wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable."); *In re D.A.*, 506 N.W.2d 478, 479 (Iowa Ct. App. 1993) ("The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems.").

Because the State provided reasonable services for reunification and the child could not be returned to the father's care at the time of the termination-of-parental-rights hearing, we agree with the juvenile court that the State proved the ground for termination set forth in section 232.116(1)(h).

### B. Additional Time and Motion to Reopen Record.

The father also argues the court should have granted him additional time for reunification in its initial termination-of-parental-rights order rather than terminating his parental rights, and he insists the court should have granted his motion to reopen the record since he was paroled the day after the court's order. Assuming without deciding the court had jurisdiction to rule on his motion, we agree with the juvenile court that added time is not warranted under the circumstances of the case, even considering the father's parole.

The juvenile court may only defer termination for a period of six months if it can "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home *will no longer exist at the end* of the additional six-month period." Iowa Code § 232.104(2)(b) (emphasis added). Because of the

father's history of substance abuse and crimes, additional time would be necessary before he could show he was in a position to care for the child safely. We cannot say with any confidence that, given the father's history, the need for removal would no longer exist if the father was given six additional months. We are not willing to gamble with the child's health and safety in hopes the father can get his act together. The child needs permanency now, and the child's best interests do not support prolonging the case. We therefore agree with the juvenile court that added time under the circumstances of the case was not warranted, even if the court had granted the father's motion to reopen the record to consider his parole.

### IV. Conclusion.

Under the facts and circumstances of this case, the State provided reasonable services for reunification and the child could not be returned to the father's care at the time of the termination-of-parental-rights hearing. And even considering the father's parole, additional time under section 232.104(2)(b) is unjustified. We therefore affirm the order terminating the father's parental rights.

**AFFIRMED.**