# IN THE COURT OF APPEALS OF IOWA

No. 19-1411
Filed November 6, 2019

IN THE INTEREST OF A.C. and A.C.,
Minor Children,

H.C., Mother,
    Appellant.

_____

    Appeal from the Iowa District Court for Polk County, Susan Cox, District Associate Judge.


    A mother appeals the termination of her parental rights to two minor children. **AFFIRMED.**


    Chira L. Corwin of Corwin Law Firm, Des Moines, for appellant mother.

    Thomas J. Miller, Attorney General, and Anna T. Stoeffler (until withdrawal) and Mary A. Triick, Assistant Attorneys General, for appellee State.

    Lynn Vogan of Youth Law Center, Des Moines, attorney and guardian ad litem for minor children.


    Considered by Bower, C.J., and Vaitheswaran and Greer, JJ.

**GREER, Judge.**

A mother appeals the termination of her parental rights to two minor children. She argues she could resume custody of the children at the time of termination and termination is not in their best interests. We disagree and affirm.

## I. Background Facts and Proceedings.

H.C. is the mother of Ax.C., born in December 2014, and Ad.C., born in October 2017.[1] Despite the children having different fathers, Ax.C.'s father and paternal grandmother, R.R., have been actively involved in Ad.C.'s life since he was born.

The Department of Human Services (DHS) involvement began when Ax.C. tested positive for marijuana at birth. It became apparent that the mother had a long history of mental-health and substance-abuse issues.[2] Her diagnoses involved bipolar disorder, major depressive disorder, and anxiety. She struggled with consistently taking her mental-health medications and attending therapy. Her drug use included marijuana, methamphetamine, and at times cocaine. Even though she has participated in both inpatient and outpatient substance-abuse treatment several times, each unsuccessful attempt ended with a return to destructive behavior.

---

[1] These two children have different fathers. The court did not terminate Ax.C.'s father's parental rights. Ad.C.'s putative father refused to participate in paternity testing and did not participate in the juvenile court proceedings. No other possible fathers of Ad.C. stepped forward during the juvenile court proceedings. The putative father's parental rights, as well as the parental rights to all other possible fathers, were terminated. Only the mother appeals the termination of parental rights.

[2] In 2017, providers noted the mother has severe amphetamine type substance use disorder and severe cannabis substance use disorder.

These destructive behaviors involving the mother's mental-health and substance-abuse issues contributed to the family being involved with DHS at various times throughout the children's lives.[3] Because of the history of DHS involvement, there have been multiple child-in-need-of-assistance (CINA) cases, some of which were closed successfully. Yet, concerns remained resulting in new CINA adjudications for Ax.C. on September 6, 2017, and for Ad.C. on July 9, 2018.

The most recent removal of the children occurred on May 15, 2018, over allegations that Ax.C.'s father repeatedly punched the mother in the face in front of the children.[4] There were also suspicions that the mother was using methamphetamine. These behaviors led to a founded child-abuse assessment against the mother and father. DHS placed the children with R.R.

After that, the mother began to spiral. She tested positive for methamphetamine and admitted to using methamphetamine and marijuana. Even though she engaged in outpatient substance-abuse and mental-health treatment, she began to miss appointments with her therapist and substance-abuse counselor. In June, her substance-abuse counselor noted concerns that the mother was "struggling and getting depressed." In July, having obtained maximum benefits, she was discharged from outpatient treatment with a recommendation to re-engage inpatient treatment.

---

[3] Other factors were Ax.C.'s father's drug usage and his domestic abuse of the mother.

[4] After Ax.C.'s removal in July 2017, the child remained placed with R.R., and the mother provided only four months of caretaker time. Since Ad.C.'s birth in October 2017, the mother only provided care for about seven months while R.R. covered all remaining months.

To her credit, she obtained admission to an inpatient program, but she admitted to using methamphetamine the day before entering the program. By August 13, that inpatient treatment program discharged her because she was "escalating quickly with her peers, struggling with mental health[,] and exhibit[ing] threatening behaviors."

Without the structure of inpatient treatment, the mother canceled several visits with the children in August, and she attended no visits with the children from September 20 to October 9. On October 6, the mother admitted to using methamphetamine. She attended a supervised visit with the children on October 10. At this visit, she told the Family Safety, Risk, and Permanency (FSRP) worker that she had not been attending treatment regularly and was looking into returning to inpatient treatment. The next day, the mother was arrested and charged with identity theft, six counts of unauthorized use of a credit card, and theft in the fifth degree. She was in jail until November 1.

On December 3, the mother began her most recent attempt at inpatient substance-abuse treatment. She claimed she had been sober since October 6. Yet, she tested positive for marijuana on December 14. Even so, the mother disputes that she was using marijuana at the time of that drug test.

Based on the downward spiral, on January 6, 2019, the juvenile court entered a permanency order directing the State to proceed with termination of the mother's parental rights to both children. On January 16, while still in an inpatient setting, she got into a verbal argument with another resident and could not calm down when staff intervened. During this incident, the staff was concerned about

the safety of the other residents. Unsuccessful with this treatment, the program discharged the mother.

After her discharge from inpatient treatment, the mother again began participating in outpatient treatment. To her credit, she re-engaged with mental-health treatment and started taking her medication more consistently. The mother pleaded guilty to three counts of credit card fraud on January 28 and received two years of probation.

Four days later, the State filed a termination petition for both children. The juvenile court held a termination hearing on April 29. At the time of the termination hearing, the mother had a job working fifteen hours per week, had her driver's license, and was receiving Social Security Disability Insurance benefits and housing assistance. She claimed she had been sober since October 6, 2018. She was living in a two-bedroom apartment and testified that she could meet her financial obligations.

At the termination hearing, the court heard testimony from the court-appointed special advocate (CASA), the FSRP worker, the DHS caseworker, the maternal grandmother, the mother, a substance-abuse counselor, and R.R. Of the five witnesses who were asked whether the mother could now resume custody of the children, only one of the witnesses, the FSRP worker, testified that she could. The other four witnesses, including the mother herself, believed she would need a transition period of at least three to six months to resume custody.

The juvenile court determined the State had proven grounds for termination under Iowa Code section 232.116(1)(e), (f), and (*l*) (2019). After finding termination was in the children's best interests and there were no exceptions to

termination, the court terminated the mother's parental rights to both children. The mother appeals.

## II. Standard of Review.

Our review of termination of parental rights proceedings is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). We give weight to the juvenile court's factual findings, but they do not bind us. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). The paramount concern is the children's best interests. *Id.*

## III. Analysis.

The mother argues the State failed to prove statutory grounds for termination and termination is not in the children's best interests. We consider the mother's claims in turn.

**A. Statutory Grounds for Termination.** The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(f) and (*l*) for Ax.C. and (h) and (*l*) for Ad.C. "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

To begin, the mother does not dispute that the State established the first three elements of section 232.116(1)(f) and (h).[5] She only challenges the final

---

[5] Under Iowa Code section 232.116(1)(f), the court may terminate parental rights if it finds all of the following:

      (1) The child is four years of age or older.
      (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
      (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

element—that the children could not be returned to her custody at the time of termination. *See* Iowa Code § 232.116(1)(f)(4), (h)(4). The mother argues the evidence at the termination hearing showed she was capable of resuming custody of the children "either immediately or within a few short months." She also points to her sobriety and her continued participation in mental-health therapy and substance-abuse treatment as evidence that she was capable of parenting the children.

The only witness who believed the mother could resume custody at the time of termination was the FSRP worker. That said, the FSRP worker only supervised one of the two weekly two-hour visits between the mother and the children. The worker acknowledged that she did not know all the facts and circumstances of the case and that she was concerned that the mother had never completed substance-abuse treatment.

The mother conceded she could not resume custody of the children at the time of the termination hearing. Instead, she requested a three-month transition plan with increasing visits until she could resume custody. The mother testified, "If

---

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Under Iowa Code section 232.116(1)(h), the court may terminate parental rights if it finds all of the following:
    (1) The child is three years of age or younger.
    (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
    (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
    (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

I just get kids handed back, after only having four hours per week. That is going to be a lot to handle." The State clarified:

> Q. But you are not requesting placement today; is that correct?
> A. No.

The DHS caseworker, the CASA worker, and R.R. echoed the mother's concerns about an immediate transition. The DHS caseworker noted that if the services lessened and the court's involvement phased out, the mother would likely struggle to maintain sobriety, her mental health would deteriorate, she could relapse, and DHS would have to remove the children again. Concerns centered on the pattern of sobriety, reunification, and relapses related to failure to address her mental health.

We applaud the mother's recent efforts to avoid drugs and maintain good mental health. Nevertheless, after considering all of the evidence, including the mother's own testimony, we conclude there was clear and convincing evidence that the mother could not resume custody of the children at the time of the termination hearing. For that reason, the State has proved the statutory grounds for termination of parental rights under Iowa Code section 232.116(1)(f) and (h).[6]

**B. Best Interests.** In the alternative, the mother argues that even if the State could prove statutory grounds for termination, termination is not in the children's best interests. When considering the children's best interests, we will "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical,

---

[6] Because we determine the State has proved grounds for termination under Iowa Code section 232.116(1)(f) and (h), we decline to consider section 232.116(1)(l).

mental, and emotional condition and needs of the child[ren]." *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010) (quoting Iowa Code § 232.116(2)).

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (quoting *P.L.*, 778 N.W.2d at 41). "Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" *Id.* at 778 (quoting *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000)).

It is clear the mother loves her children and they are bonded with her. Even so, she has not shown that she can manage her mental-health and substance-abuse issues for more than a few months at a time. While the mother made strong efforts for her betterment and sobriety at the time of the termination hearing, her history reflected an inability to maintain her sobriety for any significant period. It is also concerning that she misrepresented her sobriety date and minimized the positive drug test from December 2018. To that end, she never successfully completed substance-abuse treatment and struggles to manage her serious mental-health issues.

Unlike the mother's struggles with sobriety and stability, R.R. has been caring for the children for much of their lives. The children have a strong, stable,

and loving relationship with her. She has shown an ability to care for the children,[7] has expressed a desire to adopt both children,[8] and wanted to continue a relationship between the mother and children, even in the event of termination, so long as the mother was sober.

The children deserve permanency and stability, which the mother has not proved she can provide. *See, e.g.*, *In re D.A.*, 506 N.W.2d 478, 479 (Iowa Ct. App. 1993) ("The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems."). The juvenile court put it aptly, "The court believes the mother desperately wants to be better and deserves to be safe and healthy. Unfortunately, the children have repeatedly been harmed by her destructive cycle and dishonesty." We agree with the juvenile court that termination is in the children's best interests.

## IV. Disposition.

For these reasons, we affirm the juvenile court ruling terminating H.C.'s parental rights to Ax.C. and Ad.C.

**AFFIRMED.**

---

[7] R.R. completed foster care training.

[8] However, we note Ax.C.'s father potentially could reunite with his child leaving Ad.C. available for adoption, potentially by R.R.