# IN THE COURT OF APPEALS OF IOWA

No. 19-1361
Filed November 27, 2019

**IN THE INTEREST OF A.C.,**
**Minor Child,**

**M.C., Mother,**
Appellant.

_____

Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, District Associate Judge.

A mother appeals the termination of her parental rights to a daughter. **AFFIRMED.**

Janet L. Hoffman, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Anna T. Stoeffler (until withdrawal) and Mary A. Triick, Assistant Attorneys General, for appellee State.

Adam Hanson, Des Moines, attorney and guardian ad litem for minor child.

Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**TABOR, Judge.**

A.C.'s "entry into the world was tumultuous," as the juvenile court found in its order terminating the parental rights of her mother, Macey. A.C. was born in Arizona with drugs in her system after Macey fled Iowa to evade outstanding arrest warrants. The birth stunned Macey, who did not realize she was pregnant. Eventually, Macey and A.C. returned separately to Iowa. Macey was incarcerated. Meanwhile, A.C. settled into the care of her maternal grandfather. In this appeal, Macey argues (1) termination is not in A.C.'s best interests, (2) breaking their bond is detrimental to A.C., (3) the State failed to make reasonable efforts to reunite mother and daughter, and (4) she should be given an additional six months to work toward assuming custody.

On our review of the record, we affirm termination of Macey's rights.[1] The record shows A.C.'s best interests are served by moving toward permanency with her grandfather. The strength of A.C.'s bond with Macey does not overcome the child's need for a safe and stable placement. The State made reasonable efforts toward reuniting the pair. And an additional six months will not be enough time to resolve Macey's ongoing issues with substance abuse and instability. Our independent assessment of the evidence matches the conclusions reached by the juvenile court.

---

[1] We review termination-of-parental-rights cases de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). While not bound by the juvenile court's fact findings, we give them weight, particularly on credibility issues. *Id.* The State must present clear and convincing evidence to support the termination. *In re A.M.*, 843 N.W.2d 100, 110–11 (Iowa 2014). Evidence satisfies that standard if no serious or significant doubts exist about the correctness of conclusions of law drawn from the proof. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). The child's best interests remain our primary concern. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019).

## I.  Facts and Prior Proceedings

In early 2018, Macey was homeless and regularly used methamphetamine and marijuana.  She had a criminal history including theft, assault, harassment, and drug possession.  Because of outstanding warrants for her arrest in Iowa, Macey fled to Arizona.  When she found out she was pregnant, she took an oral abortifacient medication.  She did not realize it did not work.  She kept using drugs.  Until she went into labor in September, she was unaware she was still pregnant.

Given those events, A.C. tested positive for methamphetamine and marijuana at birth.  Macey left the Arizona hospital without A.C. and returned to Iowa.  Abandoned, A.C. went into foster care in Arizona.  When A.C. was two months old, Arizona authorities contacted the Iowa Department of Human Services (DHS) to coordinate her transfer to Iowa.

The Iowa juvenile court adjudicated A.C. as a child in need of assistance (CINA) in November 2018.  The DHS placed A.C. in the care of her maternal grandfather, Dennis, where she has remained throughout this case.  Dennis has been attending to A.C.'s withdrawal-based medical issues including a tremor and vision problems.  A.C.'s guardian ad litem reports A.C. is doing well in his care, and they share a strong bond.

About one month after Macey returned to Iowa, police arrested her on new drug charges, leading to the revocation of her probation.  She was in the Polk County jail from early November 2018 until she transferred to the Iowa Correctional Institution for Women in Mitchellville in December.

While incarcerated, Macey sought services to overcome her previous instability and drug use.  She has mental-health diagnoses of anxiety, depression,

and PTSD. She testified she takes medication and participates in therapy. She also underwent substance-abuse evaluations and began a treatment program in March.

Also while incarcerated, Macey has maintained contact with A.C. The DHS provides supervised visitation at the prison once a month for one hour. And Dennis brings A.C. to visit Macey at the prison on Saturdays and Sundays for three to four hours at a time. The family safety, risk, and permanency (FSRP) worker assigned to the case reported Macey assumes all parenting duties during their visits and visits generally go well.

But in May 2019, the prison put Macey in lockdown and removed her from a work-release program. Macey had been dishonest about arranging a meeting with an acquaintance while at work outside the walls. Macey violated those prison rules less than two months after starting the program. As a result, she lost her privilege to have visits with A.C. for several months. Macey admitted she was not showing that A.C. was her priority when she engaged in that conduct.

Macey also lost her place in the prison substance-abuse program because of that rule violation. She resumed the program in June 2019, three months before the termination hearing. The program lasts five months. Macey estimated she would be eligible for parole when she finished the program in October 2019. After she left prison, she planned to enter the House of Mercy, an inpatient facility that would allow her to care for A.C. while receiving treatment. But her plans were not a certainty. A July letter from Macey's correctional counselor did not recommend she be paroled to the House of Mercy because the counselor believed Macey needed more time to demonstrate "her primary priorities."

In late July 2019, the juvenile court held a termination hearing. Macey, who remained incarcerated, participated by telephone. In September, the juvenile court terminated Macey's rights.[2] Macey appeals.

## II. Analysis

The juvenile court terminated Macey's parental rights under Iowa Code section 232.116(1)(h) (2019).[3] The court decided Macey could not resume custody of A.C. at the present time, and Macey does not contest that statutory ground for termination. *See A.M.*, 843 N.W.2d at 111 (interpreting statutory language "at the present time" as the time of the termination hearing). Instead, she contends the court should have rejected the State's termination petition for these reasons: (1) A.C's best interests; (2) the closeness of the parent-child bond; (3) the lack of reasonable efforts to reunite the family; and (4) Macey's request for an additional six months to demonstrate her ability to assume custody.

First, Macey contends it is not in A.C.'s best interests to terminate her parental rights. In making the best-interests determination, we give primary consideration to the child's safety; the best placement for furthering her long-term nurturing and growth; as well as her physical, mental, and emotional condition and

---

[2] The court terminated the parental rights of A.C.'s father too, but only Macey appeals.

[3] Termination under that section requires showing:

(1) The child is three years of age or younger.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

needs. Iowa Code § 232.116(2); *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). That consideration may include a child's integration into her foster family and whether the foster family is willing to adopt. *See* Iowa Code § 232.116(2)(b). Safety and the need for a permanent home mark the "defining elements in a child's best interest." *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially).

Macey says she knows "she must rise to the challenge" presented here. She must overcome her substance-abuse and mental-health problems to parent A.C. She emphasizes she is attending mental-health and substance-abuse treatment, has signed up for a parenting class, and asked about entering the House of Mercy after her release.

We appreciate Macey's recent efforts. But the record shows termination is in A.C.'s best interests. Macey has not proved she can provide a safe home for her daughter. Macey was in prison at the time of the termination hearing. And even before her incarceration, she did not have stable housing. She has not completed substance-abuse or mental-health treatment. In fact, she squandered her opportunity to accomplish that within the statutory timeframe for termination when she broke the prison rules. Macey has never had A.C. in her care. Attending to A.C.'s needs during visitation at the prison, while a step in the right direction, is very different from resuming full-time custody. We have declined to delay permanency "while parents experiment with ways to face up to their own problems." *In re D.A.*, 506 N.W.2d 478, 479 (Iowa Ct. App. 1993).

Macey's life before A.C. was characterized by bad decision-making. And Macey has not fully demonstrated good judgment or a willingness to put A.C. first

since then. Given her tender age, A.C.'s need for a permanent home is urgent. *See C.B.*, 611 N.W.2d at 495 ("Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency. Insight for the determination of the child's long-range best interests can be gleaned from the parent's past performance."). A.C. has lived with her maternal grandfather for most of her life. She is doing well in his care, and he is willing to adopt her. Dennis is also caring for another grandchild, a boy slightly older than A.C. The FSRP worker noted a strong bond between the cousins. Clear and convincing evidence shows severing Macey's legal tie to A.C. is in the child's best interests.

Second, Macey contends termination would be detrimental to A.C. because of the closeness of the parent-child relationship. *See* Iowa Code § 232.116(3)(c). Macey and the FSRP worker testified A.C. recognizes Macey, is excited to see her, and they interact well together. But that positive interaction does not mean termination of parental rights would be detrimental to A.C. Given A.C.'s need for permanency, the fact she has never been in Macey's custody, and her connection to family in Dennis's care, we cannot conclude termination would be detrimental.

Third, Macey asserts the DHS did not make reasonable efforts to establish visitation or provide her other services. Macey complains the DHS case worker has had "absolutely no contact of any kind" with her during the length of the case. The DHS worker acknowledged in her July 2019 termination report to the court that she had "minimal information" about Macey's parenting skills. While the lack of contact with the DHS worker is concerning, it does not establish a lack of reasonable efforts here.

Parents whose children have been removed from their care have a duty to ask for other services before the termination hearing. *See In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017). In its orders during the CINA case, the court noted its inquiry into whether Macey requested any additional services. On each occasion, the court either noted Macey did not request additional services or granted additional services. For example, Macey requested and received visitation in the prison supervised with an FSRP worker. Macey also requested and received approval for Dennis to bring A.C. to visit her on weekends. The State contends Macey made no other requests that were not met. We agree the State's efforts to provide services and visitation were reasonable under the circumstances. Macey waived any other complaints she has by not raising them earlier. *See In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct App. 2005).

Fourth and finally, Macey contends she should have been given additional time to work toward reunification. To grant an extension of six months, under Iowa Code section 232.104, the court must determine the need for removal will no longer exist at the end of that time. *Id.* at 89. We cannot make such a determination here. Macey has a long history of substance-abuse and mental-health problems and has just begun to address them. Shortly after entering Mitchellville, she broke a prison rule that curtailed her visitation time with A.C. and detoured her treatment path. We do not have any reason to believe the problems that exist now will disappear in six months. The extension is not warranted.

**AFFIRMED.**