In the Interest of D.A., JR., M.A., B.A., S.A., and R.A., Minor Children,

M.K., Natural Mother, Appellant.

No. 93–183.

Court of Appeals of Iowa.

Aug. 6, 1993.

Michael J. Burdette of Cook, Gotsdiner, McEnroe & McCarthy, Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., and Judy Sheirbon, Asst. Atty. Gen., for appellee State.

Michelle Chenoweth, Youth Law Center, Des Moines, guardian ad litem.

Considered by DONIELSON, P.J., and HAYDEN and HABHAB, JJ.

DONIELSON, Presiding Judge.

M.K. is the natural mother of D.A.; born August 7, 1981; M.A., born November 10, 1982; B.A., born August 17, 1984; S.A., born October 12, 1986; and R.A., born July 4, 1988.

The children were adjudicated children in need of assistance (CINA) in 1990, pursuant to Iowa Code section 232.2(6)(c)(2). M.A. had been sexually abused more than once by baby-sitters. Removal of all the children was necessary because of lack of supervision and highly unsanitary conditions in the home. The court ordered that M.K. be provided with services to enable her to provide a consistent, safe, and proper home for the children.

M.K.'s weekly visitation varied between supervised and unsupervised because of the inappropriate presence of the children's natural father, D.A., Sr., and other strangers in the home. M.K. stopped attending scheduled counseling and continued her relationship with her physically abusive live-in boyfriend. Combined petitions to terminate M.K.'s parental rights were filed on March 2, 1992. Her therapist, a CASA worker, and the caseworker all recommended termination of parental rights.

The district court terminated M.K.'s rights to the four older children on January 7, 1993, pursuant to Iowa Code section 232.116(1)(e). On the same day her rights to the youngest

child were terminated pursuant to Iowa Code section 232.116(1)(g).

M.K. appeals. She argues that the record reflects she is a caring and loving mother who, as a result of intensive therapy and counseling, recognizes the needs of her children, and can provide a safe, secure, nurturing home for them. She asserts that at the time of trial she had gainful employment and had been maintaining a sanitary residence. She argues that she has learned to identify abusive relationships and to remove herself and the children from them.

The State argues that M.K. has not followed through with what she has learned in therapy and during visitation. The State also argues that the service providers clearly stated M.K. was not yet able to protect herself or the children. The State asserts that the children have been in foster care continuously since 1990, are adoptable, and need stability. The guardian ad litem for the children joins the State in supporting the termination of parental rights.

■ Our review of proceedings to terminate parental rights is de novo. *In the Interest of L.L.*, 459 N.W.2d 489, 493 (Iowa 1990). We review the facts as well as the law and adjudicate parental rights anew. *In the Interest of Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). We give weight to the findings of the juvenile court, especially with respect to the credibility of witnesses, but are not bound by them. *In re A.M.S.*, 419 N.W.2d 723, 726 (Iowa 1988).

■ Our primary concern is the long-term best interests of the children, not just the immediate interests. *In the Interest of L.L.*, 459 N.W.2d at 493–94. We look to past parental performance "because it may indicate the quality of care the parent is capable of providing in the future." *Id.* at 494 (*citing In re A.M.S.*, 419 N.W.2d at 726).

■ While we recognize that the law requires a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills," Iowa has built this patience into the statutory scheme of chapter 232. *In the Interest of A.C.*, 415 N.W.2d 609, 613–14 (Iowa 1987). It provides this patience by prescribing certain steps to protect the rights of natural parents in termination proceedings. *In the Interest of I.L.G.R.*, 433 N.W.2d 681, 689 (Iowa 1988). However,

[t]here are a number of stern realities faced by a juvenile judge in any case of this kind. Among the most important is the relentless passage of precious time. The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems. Neither will childhood await the wanderings of judicial process.

*In the Interest of A.C.*, 415 N.W.2d at 613. For this reason, plans which exceed the twelve-month period during which a parent tries to achieve adequate parenting skills are viewed with a sense of urgency. *Id.* at 614.

The children in this case were removed from appellant's custody on May 11, 1990, after being confirmed as CINA within the meaning of Iowa Code section 232.2(6)(c)(2) (1989). At the time of the termination hearing beginning on April 21, 1992, the children had been in foster care for nearly two years. The "wanderings of judicial process" have now extended that time to over three years.

■ The evidence in the record is clear and convincing that the children could not be returned to the custody of appellant at the time of the termination hearing. Although she had made progress in improving her parenting skills, the uniform testimony of the professionals involved in this case, her psychologists and counselors, the visitation supervisor, and the caseworker, was that appellant was unable to provide adequate care, supervision, and protection to her children, even in brief visitation periods.

M.A. was originally adjudicated CINA based on repeated failure of her parents to protect her from sexual abuse. While they were receiving services, after the first episode of abuse, her parents failed to supervise her closely with strangers and M.A. was sexually abused two more times. M.A. received individual therapy, but continued to show inappropriate physical affection for strangers. The Department of Human Services caseworker, Michelle Claussen, changed appellant's unsupervised visitation with M.A. to supervised because appellant

demonstrated an ongoing inability to provide supervision and protection. During visitation, M.A. was bitten by a snake while playing near an abandoned house. M.A. also was allowed to sleep in the living room while strangers were in the home, despite clear instruction that she was to sleep in her own room and be supervised closely with strangers.

The protective service worker, Lynn Rowe, who has worked with appellant since 1989 to help appellant develop basic parenting, housekeeping, and budgeting skills, testified that she continued to have to intervene with the children during visitation to correct behavior because appellant failed to do so. She said,

> I think she understands what she needs to do because she can verbalize it very well. If you are just speaking with [M.K.], she has wonderful ideas about parenting and what should be done and what needs to be done. She just can't seem to follow up on it in her actions.... Our visitation has been very limited in the fact that it's easy to keep track of the children because we are in a small room. It's for a short period of time. I feel that if there was unsupervised visitation and there was the freedom to go other places and get in bigger spaces, that I would be concerned about [M.K.'s] ability to supervise the children well enough to keep them safe.

If appellant would have difficulty with unsupervised visitation, she likely would have greater difficulty with complete custody of the children.

Appellant continues to live with her boyfriend who has verbally and physically abused her. He has a varied criminal history. Appellant's counselor, Victoria Bruner, described the relationship as "potentially lethal." Ms. Bruner testified appellant must end this relationship and receive in-patient treatment for her own history of severe physical and sexual abuse before she would be capable of parenting the children properly. Appellant has refused to end the relationship, denying or minimizing its violent character. She also has not participated in any in-patient therapy.

Appellant stopped seeing her counselor, Mike Huston, in January, 1992, even though she had future appointments. She also stopped seeing Ms. Bruner after the first day of the termination hearing, even though Ms. Bruner indicated she would waive her fees. Her demonstrated lack of consistency in attending individual therapy sessions suggests that she would be unable to provide the children with consistent access to the therapy they require.

The children need and deserve permanent and stable placement with families that can provide the care, supervision, and counseling the children require. The record provides clear and convincing evidence that appellant is unable to meet these needs. The children cannot be returned to her custody. Pursuant to Iowa Code sections 232.116(1)(e) and 232.116(1)(g), we find termination of appellant's parental rights appropriate. Therefore we affirm the decision of the juvenile court terminating her parental rights.

**AFFIRMED.**