# IN THE COURT OF APPEALS OF IOWA

No. 16-0481
Filed April 27, 2016

**IN THE INTEREST OF B.C. and B.C.,**
**Minor Children,**

**K.S., Mother,**
     Appellant.

_____

Appeal from the Iowa District Court for Scott County, Mark Fowler, District Associate Judge.

A mother appeals from the order terminating her parental rights. **AFFIRMED.**

Timothy J. Tupper of Tupper Law Firm, Davenport, for appellant mother.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd and Janet L. Hoffman, Assistant Attorneys General, for appellee State.

Patricia A. Rolfstad, Davenport, attorney and guardian ad litem for minor children.

Considered by Potterfield, P.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

A mother appeals from the juvenile court's order terminating her parental rights to her two children, B.C., born in 2012, and B.C., born in 2013. She argues (1) termination was not in the children's best interests, (2) termination is detrimental due to her strong bond with the children, and (3) she should have been allowed additional time to reunify with the children.

## I.      Background Facts and Proceedings

In September 2013, the children came to the attention of the Iowa Department of Human Services (DHS). At that time, the elder child and mother tested positive for cocaine. The mother admitted a relapse in October 2013 and tested positive for cocaine in November 2013. The children were adjudicated children in need of assistance (CINA) in March 2014, and were placed in the custody of their maternal aunt. In April, following the mother's participation in services, the children were returned to the custody of their mother.

In July 2014, the mother contacted DHS and admitted to a relapse that same month. The mother stated she took the children to the maternal aunt during the relapse but resumed care of the children the following day. The children received a drug screen, and the younger child tested positive for cocaine. Though recommended, the mother did not immediately reengage in outpatient treatment services. In August 2014, the children were again placed in the care of their maternal aunt. The mother regained custody of the children in April 2015.

In May 2015, the mother was arrested for driving while intoxicated. DHS recommended the mother attend three substance abuse group meetings twice a

week. From May 1 until July 20, the mother attended only three times. The mother failed to disclose to DHS her continued drug use until a drug test was requested on July 20. The mother refused to take the drug test, instead admitting to using cocaine several weeks prior. At that time, the children's hair had been cut too short for a drug test.[1] Pursuant to a removal order dated July 27, the children were removed again from the mother's care and placed in family foster care. The children were not placed with the maternal aunt due to the aunt's health issues and DHS's opinion the aunt appeared overwhelmed by caring for the children in past placements. Further, the aunt had not followed DHS's visitation arrangements and had allowed the mother over regularly to help care for the children. At trial, the case worker expressed concerns that the maternal aunt would allow continued unsupervised contact with the mother and possibly even allow the mother to take the children back.

Following removal, the mother's participation in services was inconsistent. She also failed to regularly attend the visitation opportunities made available to her. From September 3, 2015, until the date of the termination hearing on January 27, 2016, the mother had visited her children three times, with the last visit on November 24, 2015, despite being offered weekly visits.

At the termination hearing, which the mother did not attend, the children's case manager, the guardian ad litem, and the State recommended termination. The fathers did not contest the termination of their rights and neither has appealed. The court terminated the mother's parental rights under Iowa Code section 232.116(1)(g), (h), and (*l*) (2015). The mother appeals.

---

[1] The children were drug tested in late September 2015, and both tests were negative.

## II. Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We give weight to the factual determinations of the juvenile court, especially with regard to witness credibility, but we are not bound by them. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). Our primary consideration is the best interests of the children. *Id.* at 776.

## III. Analysis

To review a decision terminating parental rights, we conduct a three-step analysis. First, we must determine whether the State established statutory grounds for termination by clear and convincing evidence. *See* Iowa Code § 232.116(1); *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Second, if the State established statutory grounds for termination, we consider whether termination is in the children's best interests under section 232.116(2). *See In re P.L.*, 778 N.W.2d at 40. Finally, we consider whether any exceptions under section 232.116(3) weigh against termination. *See id.* at 41. The mother does not appeal the statutory grounds for termination. Thus, we consider only the final two steps in this analysis.

### A. Best Interests

The mother argues it is not in the children's best interests to terminate her parental rights. Under Iowa Code section 232.116(2), in considering whether to terminate parental rights, we "give primary consideration to the child[ren's] safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." "Insight for the determination of the child[ren's] long-range best

interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" *In re A.B.*, 815 N.W.2d at 778 (citation omitted).

The mother's rights were terminated previously as to three other children based, in part, upon her substance abuse and mental health issues. She continues to struggle with her cocaine and alcohol addictions and has failed to address her mental health concerns. She has not been forthcoming with DHS about her substance abuse struggles and has even taken measures—once cutting the children's hair—to prevent the children from being tested. In the past, both children had tested positive for cocaine.

The case manager testified at trial that while the mother initially engaged in services, there was a marked decline in her involvement and ability to care for herself in the last six months. Further, the record reflects the mother has repeatedly relapsed when the children were returned to her custody. In fact, it is when the children are returned to the mother that she disengages with the services that help her address her substance abuse and mental health issues and is even unwilling to engage in services for the children.

While we recognize these children have a bond with their mother and with their extended family—including the maternal grandparents and maternal aunt— it is clear the children are thriving with their foster family, which is ready and able to adopt these children. "Children simply cannot wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable." *In re T.J.O.*, 527 N.W.2d 417, 422 (Iowa Ct. App. 1994) (citation omitted); *see also In re D.A.*, 506 N.W.2d 478, 479 (Iowa Ct. App.

1993) ("The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." (citation omitted)). We affirm the juvenile court's finding termination was in the best interests of the children.

### B. Exceptions

The juvenile court need not terminate parental rights if it finds any of the statutory exceptions under section 232.116(3) apply. *See In re P.L.*, 778 N.W.2d at 39. The factors weighing against termination are permissive, not mandatory. *In re A.M.*, 843 N.W.2d at 113. "The court has discretion, based on the unique circumstances of each case and the best interests of the child[ren], whether to apply the factors in this section to save the parent-child relationship[s]." *In re D.S.*, 806 N.W.2d 458, 475 (Iowa Ct. App. 2011).

Iowa Code section 232.116(3)(c) provides the juvenile court need not terminate the parental relationship if it finds by clear and convincing evidence that the termination would be detrimental to the child due to the closeness of the parent-child relationship. The mother contends that because she shares a bond with the child, the juvenile court should not have terminated her parental rights.

The record clearly reflects the mother has a bond with her children. At trial, the case manager testified both children had a bond with the mother and the elder child was very close to his mother and had a positive relationship with her. The case worker's report indicates the elder child "remembers [his mother] well," and "prefer[s] his mom over others." But the report also indicates "[t]he children do not demonstrate behavior that indicates any concerns relating to not seeing their mother."

At trial, the case manager testified the children were "doing quite well, more so than when they were with their mother or when they were placed with their maternal aunt in the past." The children "seek out the foster mom and dad for affection, attention, and any needs that they may have." The case manager described the elder boy as more chatty, more open, and more relaxed and both boys as well-adjusted, settled, and integrated with the foster family.

Moreover, despite this bond, the mother has failed to exercise the visitations made available to her. In an approximate five-month period, the mother visited her children only three times. The case manager testified the mother had not made genuine efforts to maintain communication with her children while they were in foster care, and since the children had entered foster care, the mother had failed to establish or maintain a place of importance in the children's lives. Considering both the immediate and long-term interests of these young children—who need and deserve permanency—the detrimental effects of continued parental rights outweigh the effects of termination. *See In re N.F.*, 579 N.W.2d 338, 341-42 (Iowa Ct. App. 1998) (finding, where there was testimony from the foster mom that the children's relationship with their mother was diminishing, the bond between the mother and the children was not enough to forestall termination, especially when the mother was unable to meet the children's needs and they were adoptable).

### C. Additional Six Months

The mother also argues she should have received additional time to work toward reunification with her children. Iowa Code section 232.104(2)(b) provides a court may grant an additional six months where the need for removal will no

longer exist at that time. At the termination hearing, the case manager testified the mother's prognosis for addressing her substance abuse issues was low. The case manager further testified she was afraid the mother was at risk for harming herself health-wise. While acknowledging the mother's early efforts to correct her issues, the case manager noted that, in the six months prior to the termination hearing, the mother's involvement in services and her ability to take care of herself and her needs had deteriorated. The mother did not respond to these assertions, as she failed to attend the hearing.

The record reflects the mother has repeatedly relapsed and failed to maintain involvement in the services offered. There is nothing that reasonably suggests the mother will overcome her addiction and be able to care for her children if termination is delayed. *See In re N.F.*, 579 N.W.2d at 341. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d at 41. Accordingly, we affirm the juvenile court's decision.

**AFFIRMED.**