**IN THE COURT OF APPEALS OF IOWA**

No. 16-0995
Filed August 17, 2016

**IN THE INTEREST OF C.C.,**
**Minor child,**

**L.M.M., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Johnson County, Deborah Farmer

Minot, District Associate Judge.

        A father appeals the termination of his parental rights to his child.

**AFFIRMED.**

        Jeannette Keller of Bowman, DePree & Murphy, L.L.C., West Liberty, for

appellant father.

        Thomas J. Miller, Attorney General, and Katherine S. Miller-Todd,

Assistant Attorney General, for appellee State.

        Anthony A. Haughton of Linn County Advocate, Inc., Cedar Rapids, for

minor child.

        Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**DOYLE, Judge.**

A father appeals the termination of his parental rights to his child. He contests the sufficiency of the evidence proving the statutory grounds for termination, argues termination is not in the child's best interests and the juvenile court erred in not applying an exception to the termination statute, and claims the State failed to provide reasonable efforts to reunify the family. Upon our de novo review, we affirm the termination of the father's parental rights.

### I. Background Facts and Proceedings.

The child, born in October 2012, came to the attention of the juvenile court in January 2015 due to suspected abuse by the mother or her live-in boyfriend. Following a court order, the State removed the child from the home and placed the child and her half-sibling together in a foster home. The child remained in that placement at the time of the termination hearing.

The mother and the father[1] were involved in a romantic relationship in Illinois when they conceived the child. Although the couple never lived together, their families lived near each other, and the father was involved in the child's life during the relationship. However, the father's involvement waned after their relationship ended in July 2013. The mother moved to Iowa in October 2014, while the father continued to reside in Waukegan, Illinois.

The father has been arrested on multiple occasions, dating back to 2009. He was in jail on sexual-assault and sexual-abuse charges from June through December 2014. At the time of the child's removal from the home, the father was

---

[1] The mother did not list the child's paternity on the child's birth certificate but identified L.M. as the father. In October 2015, paternity testing confirmed he is the child's father.

serving a sentence on a felony conviction for aggravated battery, to which he pled guilty in November 2014. He was on work release from January until June 2015. The mother informed the Iowa Department of Human Services (DHS) that the father was in jail but denied knowing his whereabouts. As a result, the father was not involved in the child-in-need-of-assistance (CINA) proceedings until the maternal grandmother provided his phone number, at which point he received personal service of the CINA petition.

The father attended the CINA adjudication hearing in July 2015 and stipulated that the child was a CINA. The father also attended a dispositional hearing and visited the child in August 2015. By that time, the State had initiated proceedings to terminate the mother's parental rights,[2] but it refrained from pursuing termination of the father's parental rights at that time due to his late involvement in the proceedings. However, the father was advised that time was of the essence because the child had already been removed from the home for six months and permanency was needed.

After his initial attendance in the CINA proceedings, the father's involvement was poor. He failed to attend a September 2015 dispositional hearing because he lacked transportation.[3] He visited with the child via video chat, but the child was not engaged during these visits. The father scheduled a visit with the child in October for her birthday but cancelled the visit at the last minute. The father had no further communication with the child or the DHS until

---

[2] The mother's parental rights, which were terminated in January 2015, are not at issue in this appeal.
[3] The father's driver's license was revoked due to a 2013 conviction for driving under the influence, and he failed to adhere to the conditions for reinstatement.

he traveled to Iowa to attend a permanency hearing in February 2016. At that time, the father requested the child be transported to Davenport for visits to decrease his travel distance, and the juvenile court granted his request. The father also agreed to biweekly visits with the child with video-chat visits between. The father attended two visits with the child in March 2016, canceled a visit scheduled for April 9, and failed to participate in video chats thereafter.

The State filed a petition seeking to terminate the father's parental rights on February 22, 2016, and a hearing was held eight weeks later. In May 2016, the juvenile court entered an order terminating the father's parental rights. The court found the State proved the requirements for termination under Iowa Code section 232.116(1)(d), (e), (h), and (i) (2015). The court found termination to be in the child's best interests and declined to apply any of the exceptions to avoid termination set forth in section 232.116(3). The father appeals.

**II. Scope and Standard of Review.**

Before terminating parental rights, the court must follow the three-step analysis enumerated in Iowa Code section 232.116. *See In re P.L.*, 778 N.W.2d 33, 40-41 (Iowa 2010). We review orders terminating parental rights de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We give weight to the juvenile court's fact-findings, though we are not bound by them. *See id.*

**III. Grounds for Termination.**

Although the juvenile court found clear and convincing evidence to terminate the father's parental rights under four grounds of section 232.116(1), we may affirm if the evidence supports termination on any one of these grounds. *See In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015). In order to terminate

the father's parental rights under section 232.116(1)(h), the State was required to prove:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a [CINA] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The father does not contest the State has shown the first three requirements by clear and convincing evidence. He instead argues the State failed to prove the fourth element for termination under section 232.116(1)(h)—that the child cannot be placed in his custody at the present time.

The father's argument centers on the failure to complete an Interstate Compact Home Study as ordered by the juvenile court in August 2015. As noted by the juvenile court, this was "only one of many barriers to placement of the child with her father." The court noted the father's lack of involvement in the child's life, seeing the child "only when it was convenient for him" and contributing "financially or materially only when he was able." As a result, the court noted that the child interacted with the father as a child of that age would with "a nice family friend, uncle, or babysitter, not a father," and instead turned to the DHS worker to receive "reassurance and comfort during visits" rather than the father. The court stated it was concerned about the father's lack of understanding about the child's needs, lack of insight into the trauma suffered by the child, failure to make minimal efforts to maintain contact with the child, and failure to take any steps to

position himself as a parent to the child. We join in this concern, the basis of which is amply reflected in the record. The State has proved the grounds for terminating the father's parental rights under section 232.116(1)(h).

.    **IV. Best Interests.**

Before terminating parental rights, the court must "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). In so doing, we agree with the juvenile court that terminating the father's parental rights is in the child's best interests. The father failed to demonstrate he could provide the child with consistency and stability. The father consistently failed to follow through and do what was asked of him or what he agreed to do during the pendency of this case. There is no reason to believe his ability to do so will improve if the child is placed in his care.

The child has been in the same foster home since removal from the mother's care in January 2015. We therefore must consider "whether the child has become integrated into the foster family to the extent that the child's familial identity is with the foster family, and whether the foster family is able and willing to permanently integrate the child into the foster family." *Id.* § 232.116(2)(b).

The juvenile court summarized the evidence regarding the changes in the child since placement in that foster home:

> On June 2, 2015, [the Family Safety, Risk and Permanency (FSRP) worker] testified that [the child]'s behavior was the most extreme she had seen in any child during the twenty-two years she had worked with families. On April 19, 2016, [the FSRP worker] described [the child] as "a different girl" who has made remarkable

progress. [The child] is bonded to her foster parents, their older children, and their large extended family, which she is coming to consider her own.

The court further noted the child's strong bond with her half-sibling, with whom she shares the same foster-home placement. The court noted the child "loves him, protects him, and expresses concern for him," and the FSRP worker testified the child would be "lost" without him.

Removing the child from this foster home with whom she has closely bonded in the aftermath of the "traumatic" abuse she suffered is not in the child's best interests. Separating the child from the half-sibling with whom she remains strongly bonded is not in the child's best interests. The father has been largely absent from the child's life, no strong bond has been established between them, and the child does not look to the father to meet her needs or provide her support. Placing the child with the father is, therefore, not in the child's best interests.

### V. Statutory Exceptions to Termination.

The father argues the juvenile court erred in declining to apply the provisions of section 232.116(3)(c) to avoid terminating his parental rights. Under this section, the court is not required to terminate parental rights if there is clear and convincing evidence that termination would be detrimental to the child due to the closeness of the parent-child relationship. *See id.* § 232.116(3)(c). As noted above, the child is not close to the father. Accordingly, the provisions of this section are inapplicable.

**VI. Reasonable Efforts.**

The father next asserts the State failed to make reasonable efforts toward reunification, as required by Iowa Code section 232.102(7) (requiring the DHS to "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"). He argues he should have been provided with financial assistance for trips to visit the child.

The reasonable efforts requirement is not a strict substantive requirement for termination. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). Instead, the services provided by DHS to reunify parent and child after removal impacts the State's burden of proving the child cannot be safely returned to the care of a parent. *See id.* Even if the father had been provided with financial assistance for his transportation to visits, there is no indication he would have followed through; the father failed to participate in the video visits he agreed to—even though these visits did not require any travel or expense on his part—just as he failed to follow through with attending parenting classes and obtaining services for the child in the nine months leading up to the termination of his parental rights. *See id.* at 495 ("Insight for the determination of the child's long-range best interests can be gleaned from evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing."). In addition, the father cited health reasons and extra work hours for his failure to visit the child, complications that would not have been erased simply with the provision of financial assistance for trips.

**VII. Additional Time.**

Finally, the father argues he should have been granted additional time to prove himself.  He claims the need for removal of the child would no longer exist if he was granted an additional six months for reunification.  *See* Iowa Code § 232.104(b).

"Time is a critical element" in termination proceedings.  *See C.B.*, 611 N.W.2d at 495.  Once the time period for termination specified in section 232.116(1) has passed, termination proceedings are viewed with a sense of urgency.  *See id.*  Children are not equipped with pause buttons.  *See In re T.J.O.*, 527 N.W.2d 417, 422 (Iowa Ct. App. 1994) ("Children simply cannot wait for responsible parenting.  Parenting cannot be turned off and on like a spigot.  It must be constant, responsible, and reliable.");  *In re D.A.*, 506 N.W.2d 478, 479 (Iowa Ct. App. 1993) ("The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems.").  The father failed to make even minimal effort to become a parent to the child during the nine months leading up to the termination hearing.  There is no reason an additional six months would change the outcome of this case.  The father should not be granted additional time to prove himself at the expense of the child.  *See In re J.L.W.,* 570 N.W.2d 778, 781 (Iowa Ct. App. 1997) (stating that "[a]t some point, the rights and needs of the child rise above the rights and needs of the parents").  To do so would be contrary to the child's best interests.

Accordingly, we affirm the termination of the father's parental rights.

**AFFIRMED.**