# IN THE COURT OF APPEALS OF IOWA

No. 19-1730
Filed January 9, 2020

**IN THE INTEREST OF J.G. and J.G.,**
**Minor Children,**

**L.G., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Marshall County, Paul G. Crawford, District Associate Judge.

A father appeals the termination of his parental rights to his children. **AFFIRMED.**

Jeffrey P. Hazen of Grimes, Buck, Schoell, Beach & Hitchins, Marshalltown, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State

Merrill C. Swartz of Swartz Law Firm, Marshalltown, attorney and guardian ad litem for minor children.

Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**DOYLE, Presiding Judge.**

A father appeals the termination of his parental rights to his children.[1] He challenges the sufficiency of the efforts made to reunite the family and contends termination is against the children's best interests. In the alternative, the father seeks to avoid termination by arguing that it would harm the children because of the closeness of the parent-child bond. We review his claims de novo. *See In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).

We first address the father's claim that the Iowa Department of Human Services (DHS) failed its obligation to "make every reasonable effort to return the child[ren] to the child[ren]'s home as quickly as possible consistent with the best interests of the child[ren]." Iowa Code § 232.102(9) (2019); *accord In re C.B.,* 611 N.W.2d 489, 493 (Iowa 2000) ("The State must show reasonable efforts as part of its ultimate proof the child cannot be safely returned to the care of a parent."). "[R]easonable efforts" are "the efforts made to preserve and unify a family prior to the out-of-home placement of a child in foster care or to eliminate the need for removal of the child or make it possible for the child to safely return to the family's home." Iowa Code § 232.102(12). The concept of reasonable efforts "includes visitation designed to facilitate reunification while providing adequate protection for the child." *C.B.,* 611 N.W.2d at 493. Although the DHS must "make every reasonable effort" to return a child to the child's home "as quickly as possible consistent with the best interests of the child," *id.* (citation omitted), the DHS has to supply only those services that "are reasonable under the circumstances." *In re*

---

[1] The mother's parental rights to the children were also terminated. She is not a party to this appeal.

*S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000) (citation omitted). "Whether visitation for an incarcerated parent should be ordered as a reasonable effort toward reunification when timely raised by the parent will depend on the circumstances of each case." *In re L.M.*, 904 N.W.2d 835, 840 n.9 (Iowa 2017).

The father bases his argument on his lack of visitation with the children while incarcerated during the first year of the of the child-in-need-of-assistance (CINA) proceedings. The juvenile court placed the children with the paternal grandparents. The father was in jail at the time. He was not offered any visits with the children while in jail because the mother did not want the children to go to the jail. Asked why the mother got to make that decision if the children were in the custody of DHS, the social worker responded, "I don't know." After the father was transferred to the Iowa Department of Corrections in July 2018, visitation was still not offered because "[the father] didn't request any." The father did not request visitation until the January 2019 permanency hearing and the DHS began visitation the next month.

Assuming without deciding the father's request for visitation reunification services was timely, based on a consideration of all of the relevant factors, we find the services offered to the father were reasonable under the circumstances. *See id.* ("The services required to be supplied to an incarcerated parent, as with any other parent, are only those that are reasonable under the circumstances."). Although additional visits may have helped form a bond between the father and children, the benefit flowing from additional visits would not have outweighed the immediate needs of the children. *See In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996) ("[N]o evidence indicated increased visitation would help [the parent]

respond to the various services offered by the DHS and assist her in becoming a better parent."). The services provided by the DHS were reasonable under the circumstances of the case.

The father next contends termination goes against the children's best interests. *See In re D.W.*, 791 N.W.2d 703, 706-07 (Iowa 2010) (requiring that the court "apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in a termination of parental rights"). In determining best interests, our primary considerations are "the child[ren]'s safety," "the best placement for furthering the long-term nurturing and growth of the child[ren]," and "the physical, mental, and emotional condition and needs of the child[ren]." *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (quoting Iowa Code § 232.116(2)). The "defining elements" we consider in making this determination are the children's safety and "need for a permanent home." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted).

Termination is in the children's best interests. The father's intravenous use of methamphetamine and violent behavior led to his incarceration and removal from the children's lives for over a year. He remained incarcerated at the time of the termination hearing. Although the father received parole one month later, eighteen months passed between the inception of the CINA proceedings and the order terminating his parental rights. The father needs additional time to address "numerous concerns" before he can care for the children safely. These children cannot afford to allow the father the luxury of additional time tacked on to the end of what is already a long proceeding in relation to their young lives. *See C.B.*, 611 N.W.2d at 494 (noting that although the law requires a "full measure of patience

with troubled parents who attempt to remedy a lack of parenting skills," the legislature built this patience into the statutory scheme of chapter 232); *In re R.J.*, 436 N.W.2d 630, 636 (Iowa 1989) (noting that once the time for reunification set by the legislature has expired, "patience on behalf of the parent can quickly translate into intolerable hardship for the children"); *In re A.C.*, 415 N.W.2d 609, 614 (Iowa 1987) ("It is unnecessary to take from the children's future any more than is demanded by statute.").

We decline to take any more time from these children. Children are not equipped with pause buttons, and delaying permanency in favor of a parent conflicts with the children's best interests. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (noting children must not be deprived of permanency on the hope that someday the parent will be able to provide a stable home); *A.C.*, 415 N.W.2d at 614 (noting that in considering whether to allow a parent additional time to remedy parenting deficiencies, the court should "constantly bear in mind that, if the plan fails, all extended time must be subtracted from an already shortened life for the children in a better home"); *In re T.J.O.*, 527 N.W.2d 417, 422 (Iowa Ct. App. 1994) ("Children simply cannot wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable."); *In re D.A.*, 506 N.W.2d 478, 479 (Iowa Ct. App. 1993) ("The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems.").

Finally, the father seeks to avoid termination under section 232.116(3), which states that the court "need not" terminate parental rights in some cases, listing certain requirements. But section 232.116(3) is permissive, not mandatory.

*See A.S.*, 906 N.W.2d at 475. If we find one of the circumstances listed in the section exists, we must still consider the children's best interests in determining whether to terminate parental rights. *See id.* And the parent bears the burden of proving one of the circumstances exists. *See id.* at 476.

The father claims that terminating his parental rights "would be detrimental to the child[ren] . . . due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). But the record belies his claim. At the time of the termination hearing, the older child was three years old. The father was in prison for sixteen months—almost half of the older child's life and the entirety of the younger child's life. The children had no contact with the father during his first year of incarceration and their contact after that was limited. Because the evidence does not support a finding that termination would harm the children, section 232.116(3)(c) does not apply.

We affirm the termination of the father's parental rights.

**AFFIRMED.**