# IN THE COURT OF APPEALS OF IOWA

No. 20-0012
Filed March 4, 2020

**IN THE INTEREST OF K.L.,**
**Minor Child,**

**K.R., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Scott County, Christine Dalton Ploof,

District Associate Judge.

A mother appeals the termination of her parental rights to her child.

**AFFIRMED.**

Barbara E. Maness, Davenport, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant

Attorney General, for appellee State.

Jack E. Dusthimer of Dusthimer Law, Davenport, attorney and guardian ad

litem for minor child.

Considered by Vaitheswaran, P.J., and Doyle and May, JJ.

**DOYLE, Judge.**

A mother appeals the termination of her parental rights to her child, K.L., one of four children the juvenile court removed from the mother's care and adjudicated to be children in need of assistance (CINA) in 2018.  But the CINA adjudication marked only the most recent event in what is the Iowa Department of Human Services (DHS) long history of involvement with the family because of concerns over substance abuse, domestic violence, sexual abuse, and neglect.  Given this history, the State petitioned to terminate the mother's parental rights to all four children in July 2019.  After a hearing, the juvenile court found the mother made "remarkable progress" in 2019 and dismissed the petition to terminate her parental rights to the three older children.  But the court granted the State's petition to terminate her parental rights to K.L. under Iowa Code section 232.116(1)(d) and (h) (2019).  On appeal, we review that decision de novo.  *See In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).

The mother challenges the finding that K.L. could not be returned to her custody at the time of the termination hearing, one of the requirements for termination under section 232.116(1)(h).[1]  *See* Iowa Code § 232.116(1)(h)(4) (requiring "clear and convincing evidence that at the present time the child cannot

---

[1] Because the mother does not contest the termination of her parental rights under section 232.116(1)(d), we may affirm on this ground without further analysis.  *See In re T.S.*, 868 N.W.2d 425, 435 (Iowa Ct. App. 2015) (noting that when the juvenile court terminates parental rights on multiple statutory grounds, we may affirm the termination order if clear and convincing evidence supports one of the grounds); *see also Aluminum Co. of Am. v. Musal*, 622 N.W.2d 476, 479-80 (Iowa 2001) ("Issues not raised in the appellate briefs cannot be considered by the reviewing court.").  But, regardless, we find clear and convincing evidence supports termination under section 232.116(1)(h).

be returned to the custody of the child's parents as provided in section 232.102"); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the term "at the present time" to mean "at the time of the termination hearing"). A child cannot be returned to a parent's custody if doing so would expose the child to any harm amounting to a new CINA adjudication. *See In re M.S.*, 889 N.W.2d 675, 680 (Iowa Ct. App. 2016) (observing that a child cannot be returned to the custody of the parent under section 232.102 if doing so would exposed the child to any harm amounting to a new CINA adjudication).

The juvenile court found the three older children could be returned to the mother's custody because the risk of adjudicatory harm to them was low. But it reached a different conclusion with K.L., who is much younger and has "severe medical issues," which the court described in the termination order:

> [K.L.] is microcyphalic. She is missing some white matter and the extent of the brain damage is unknown. She has many of the symptoms of Fetal Alcohol Syndrome, and her mother admitted drinking throughout the pregnancy. Her eyes are crossed and she has poor vision; that is being helped by surgery. Her overall muscle tone was very poor, and she is much delayed in her speech relying on a simplistic sign language and basic words to communicate. She receives physical and speech therapy, which is improving both muscle tone [and] coordination, and helping her use more words. [K.L.] seems unable to self sooth. When upset, she needs to be rocked and held to calm. She has a "myriad" of medical appointments that must be attended so she can develop as normally as possible.

The court explained that because of the difference in the children's ages and needs, returning K.L. to the mother's care would place K.L. at risk of adjudicatory harm:

> Because of her age and medical conditions, [K.L.] needs more protection than the older children. The Court is not convinced that [the mother] can protect [K.L.] from her siblings and manage all four

children at the same time. Each of these four children have very high demands of their caretaker. . . . While the Court is hopeful that [the mother] can handle the three older children and keep them safe, there is little evidence that she can do so for [K.L.] also.

The court also noted that the mother has failed to meet K.L.'s many medical needs, attend all of her appointments, and provide for her care when the other children are present. Clear and convincing evidence supports the finding that returning K.L. to the mother's custody would place her at risk of harm.

The mother also challenges the finding that the State made reasonable efforts to return the child to her care.[2] *See* Iowa Code § 232.102(9) (requiring the DHS to "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"). The DHS must balance its obligation to make reasonable efforts with its obligation to protect a child from harm. *See In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). What constitutes "reasonable efforts" therefore depends on the circumstances of each case. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). The record here shows

---

[2] The mother states she preserved error by filing a notice of appeal and through her testimony at the termination hearing. But neither preserves a challenge to reasonable efforts. *See In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) (noting a parent waives a claim about reasonable efforts unless the parent complains to the juvenile court about the adequacy of the services when the services are offered— "at the removal, when the case permanency plan is entered, or at later review hearings"); *see also* Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 48 (2006) (noting the statement that error is preserved by filing a timely notice of appeal "is erroneous, for the notice of appeal has nothing to do with error preservation"). Although the mother testified she asked the workers for more time with K.L., a parent must make a request for reasonable efforts to the juvenile court to preserve error. *C.H.*, 652 N.W.2d at 148 ("[V]oicing complaints regarding the adequacy of services to a social worker is not sufficient. A parent must inform the juvenile court of such challenge.").

the visitation the DHS provided the mother was based on these competing interests.

Finally, the mother requests additional time to prove herself a capable parent. *See* Iowa Code § 232.104(2)(b) (allowing the court to continue placement of the child for six more months if it determines "that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period"). But the evidence does not support a finding that granting the mother additional time would eliminate the need for K.L.'s removal. We also note that "our legislature has established a limited time frame for parents to demonstrate their ability to be parents." *In re J.E.*, 723 N.W.2d 793, 800 (Iowa 2006). Once the grounds for termination are satisfied, time is of the essence. *See In re A.C.*, 415 N.W.2d 609, 614 (Iowa 1987) ("It is unnecessary to take from the children's future any more than is demanded by statute."); *In re C.D.*, 508 N.W.2d 97, 99 (Iowa Ct. App. 1993) ("Time is of the essence in dealing with children's issues."); *see also In re R.J.*, 436 N.W.2d 630, 636 (Iowa 1989) (noting that once the period for reunification set by the legislature has expired, "patience on behalf of the parent can quickly translate into intolerable hardship for the children"). As we have often said, children do not come equipped with pause buttons. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (noting children must not be deprived permanency on the hope that someday the parent will be able to provide a stable home); *In re T.J.O.*, 527 N.W.2d 417, 422 (Iowa Ct. App. 1994) ("Children simply cannot wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable."); *In re D.A.*, 506 N.W.2d 478, 479 (Iowa Ct. App. 1993) ("The crucial days of childhood cannot be suspended while

parents experiment with ways to face up to their own problems.").  For these reasons, no additional time is warranted.

We affirm the termination of the mother's parental rights to K.L.

**AFFIRMED.**