# IN THE COURT OF APPEALS OF IOWA

No. 21-0763
Filed July 21, 2021

IN THE INTEREST OF R.D.,
Minor Child,

H.R., Mother,
        Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Romonda Belcher,

District Associate Judge.


        The mother appeals the termination of her parental rights to her child.

**AFFIRMED.**


        Robert (Ben) Stone of Parrish, Kruidenier, Dunn, Gentry, Brown, Bergmann

& Messamer, L.L.P., Des Moines, for appellant mother.

        Thomas J. Miller, Attorney General and Mary A. Triick, Assistant Attorney

General, for appellee State.

        Michael Sorci of Youth Law Center, Des Moines, attorney and guardian ad

litem for minor child.



        Considered by Doyle, P.J., and Tabor and Greer, JJ.

**GREER, Judge.**

In May 2021, the juvenile court terminated the mother's rights to her child, born about two years earlier.[1]  Addressing issues of drug use, domestic violence, and lack of protective capacity to care, the juvenile court relied upon Iowa Code section 232.116(1)(h) (2021)[2] as a basis for termination.  Without disputing proof of the elements necessary to terminate under this section, the mother crafts an argument that the State must first demonstrate "it made reasonable efforts 'to prevent and eliminate the need for removal' and[,] ultimately, termination."  We read this as a challenge to the reasonable efforts made by the State to return the child to the mother, rather than a dispute of the "strict substantive" elements under section 232.116(1)(h).  *See In re C.B.,* 611 N.W.2d 489, 494 (Iowa 2000) ("[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination. . . .  The State must show reasonable efforts as part of its ultimate proof the child cannot be safely returned to the care of a parent.")

---

[1] The child was born in June 2019.  The father's parental rights were terminated as well, but he did not appeal.

[2] Under this section, a juvenile court will terminate parental rights if the court finds that all of the following have occurred:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h).

**I. Error Preservation and Standard of Review.**

The State raises a preservation-of-error argument as to any claim that it failed to prove the grounds for termination. Still, the mother argues the child could have been returned to her "at the present time," if: (1) she can get into residential substance-abuse treatment and (2) she is allowed to care for the child in that setting. But, this request rings more like a separate request for more time to work toward reunification. The mother points to her "recent achievement" in leaving the abusive relationship she had with the father, her "confession of sporadic drug use" and her "sincere interest in residential drug treatment," as support for a six-month extension under Iowa Code section 232.104(2)(b). As a final theory, the mother argues it was not in the best interests of the child to terminate her rights.

We review the termination of parental rights de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *Id.* at 774. "We will uphold an order terminating parental rights when there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (citation omitted). Our primary concern is the best interest of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

**II. Facts.**

The involvement of the Iowa Department of Human Services (DHS) with this family began after learning of allegations of drug use, domestic violence by the

father against the mother, and a lack of protective capacity for the child.[3] The eight-month-old child tested positive for methamphetamine, and the State moved for ex-parte removal in February 2020. The maternal and paternal grandmothers shared placement of the child during the pendency of these proceedings until June, at which point the maternal grandparents took over care.

In May 2020, the child was adjudicated to be a child in need of assistance (CINA). The case permanency plan offered the mother mental-health services, drug screening, drug treatment, and participation in parenting education offered by DHS. Unfortunately, she opted out of services. Related to the mother's drug issue, she refused to engage in twenty-six random drug screens during the fourteen months the child was removed. At the termination hearing, she admitted her use of methamphetamine such that she would have tested positive on some of the missed drug screens. She confirmed her last use of methamphetamine in early 2021.

To her credit, she did participate in one drug test in February 2021, which was negative. While the mother testified to her involvement in counseling, a March 2021 client report confirmed she completed her evaluation for substance-abuse counseling in early December 2020. Yet, the substance-abuse counselor noted the mother attended only one counseling session during that month and missed a session. Despite the limited effort in substance-abuse counseling, the mother

---

[3] Other concerns in late 2019 and early 2020 came to DHS. The mother was hospitalized for liver failure because of overconsumption of alcohol and Tylenol. As for the lack of protective capacity, DHS cited an incident where during a fight with the father, the mother fled the home with the child in inappropriate clothing for the weather.

alerted the juvenile court at the termination hearing to her plan to submit to a residential substance-abuse treatment center. But, she had not been assessed for the program guidelines, was not on a waiting list, and had not been accepted into any program.

Throughout these proceedings, domestic abuse by the father against the mother permeated their relationship. Yet, it was not until the termination hearing that the mother admitted the extent of the abuse. The mother had not addressed the mental-health concerns raised by DHS and, in particular, had not pursued any specific counseling for domestic abuse. At the hearing, the mother described a "breaking point" on April 10, when she again was a victim of domestic abuse by the father.[4] But her family and DHS urged her to address the domestic abuse early in these proceedings, which she did not do, and at the termination hearing she qualified the relationship with the father as not being abusive "all the time."

At the termination hearing, the mother testified she was living with an aunt temporarily and was not employed. The mother had not progressed to any trial home visits and only had visits under the supervision of the professionals involved. Her participation in visits and contact with DHS was inconsistent over the life of these proceedings.

In a thorough ruling, the juvenile court terminated the mother's parental rights. The mother appeals.

---

[4] The father assaulted the mother by hitting her on April 10, 2021. At the time of the termination hearing, the father was in jail for a probation violation and this domestic abuse charge. There was also a pending investigation related to a fire set in the father's garage that allegedly burned some of the mother's possessions.

**III. Analysis.**

**Sufficient Grounds for Termination.**

The mother did not contest proof of the elements under section 232.116(1)(h). While our laws allow a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills," the legislature incorporated a six-month limitation for a child under the age of three. *See In re D.A., Jr.*, 506 N.W.2d 478, 479 (Iowa Ct. App.1993) (viewing the limitation period with "a sense of urgency."). Here, the child was under three years of age, was adjudicated a CINA, and had been removed for over fourteen months at the time of the termination hearing. And the mother addresses the fourth element, not by contesting the proof offered by the State, but rather suggesting the "reasonable efforts" mandate for the State requires residential substance-abuse treatment for the mother. To put it more simply, now that the mother has admitted to her problems, she believes the State should now make reasonable efforts "to prevent and eliminate the need for removal" by sending her to treatment. She makes no argument that the child could be returned to her custody at the present time other than to suggest the child might live with her in a residential treatment facility.

To the extent the mother is arguing that the State failed to provide reasonable services, she failed to preserve the issue in this record. A demand for reasonable services cannot come for the first time at the termination hearing. *See In re J.L.W.*, 570 N.W.2d 778, 781 (Iowa Ct. App.1997). In our consideration of the sufficiency of evidence to support termination, our focus is on the services provided by the State and the response by the mother, not on services the mother requested for the first time at the termination hearing. *C.B.*, 611 N.W.2d at 494.

Still, for the first time at the termination hearing, the mother requested an opportunity to attend a residential drug-treatment program. She asserted the child could safely be placed with her at the program, thus allowing her to participate in services DHS required along with a return of the child to her care "at the present time." *But see In re J.H.*, 952 N.W.2d 157, 170 (Iowa 2020) (noting a substantial difference between meeting a child's needs with the supervision and guidance of others and being able to independently care for a child). Her intentions, while admirable, are not helpful with the task we face. We have no crystal ball to know if she could even access the residential treatment, if the child would be allowed to reside there, and most importantly, if the treatment would be successful. A return of the child "at the present time" means at the time of the hearing. *See In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018).

With that focus in mind, we find the State proved all elements for termination under 232.116(1)(h). We do not see how the child could have been returned to the mother at the "present time." *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (concluding the court need not discuss a step of the analysis when the parent did not dispute it). Admittedly, the mother realized this condition was not met when she alternatively requested a six month extension, so we address that next.

**Six-Month Extension.**

The mother ties part of her best-interests-of-the-child argument to a request for a six-month extension. At the termination hearing, the mother discussed that, as of the assault on her by the father on April 10, she would no longer tolerate domestic violence in her life. Focusing on the impact of the domestic abuse, she advocates for time to "recover from her profoundly traumatizing and violent

experience" within her relationship with the father. She admitted she was previously more focused on her relationship with the father, rather than reuniting with the child. And at the termination hearing, she requested time to address her admitted substance abuse in a residential treatment setting with the child present at the facility. With six more months to work on reunification, the mother maintains custody could be returned to her.

True, the mother needed support to address the impact of the "traumatizing and violent experience" with the father. But the mother had an additional eight months past the six-month limitation under section 232.116(1)(h) to address these issues, and time is a critical element in termination cases. "A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting." *C.B.*, 611 N.W.2d at 495. And we are unable to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *See* Iowa Code § 232.104(2)(b). Thus, we cannot support an additional six-month extension to work toward reunification.

**Best Interests of the Child.**

Last, we consider if termination is in the best interests of the child under section 232.116(2). The mother claims termination is not in the child's best interests, pointing to: the bond she and the child have; her efforts to visit as consistently as she could; her acknowledgement of her substance abuse; and her realization that she was in an abusive relationship. But all of this comes "too little, too late." *C.B.*, 611 N.W.2d at 495 (finding after eighteen months of removal of the

children, changes made two or three months before the termination hearing came too late).

Two weeks before the termination hearing, the mother finally separated from the abusive father. We note he was incarcerated at the time, making it difficult to know if the new-founded awareness was real. Likewise, when asked about the mother's request for residential treatment, the DHS supervisor offered, "I have not had that conversation with her." Again, we question the sincerity of the mother's quest for treatment. And, while the child is bonded to the mother, the maternal grandparents share a strong bond as well and are willing to adopt and provide the stability the child deserves. *See* Iowa Code § 232.116(2)(b). After considering the issues addressed above and our primary consideration of finding the "best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental and emotional condition and needs of the child," we conclude termination is in the child's best interests. *Id.* § 232.116(2); *see In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016).

**IV. Conclusion.**

Unlike the mother's central focus on her relationship with the father, "[a]t some point, the rights and needs of the child rise above the rights and needs of the parents." *J.L.W.*, 570 N.W.2d at 781. Here, we have reached that point. In the child's short life, more time has been spent outside of the mother's care than with the mother. As our supreme court noted, "[t]he crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.,* 415 N.W.2d 609, 613 (Iowa 1987). We find the State established grounds for termination under Iowa Code section 232.116(1)(h) by

clear and convincing evidence; the child could not be returned to the mother at the present time. *See C.B.*, 611 N.W.2d at 492. We decline to extend the time for termination and find no statutory exceptions to termination apply here.

**AFFIRMED.**