# IN THE COURT OF APPEALS OF IOWA

No. 20-0056
Filed April 1, 2020

**IN THE INTEREST OF L.N.,**
**Minor Child,**

**I.N., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Eric J. Nelson, District Associate Judge.

A father appeals the termination of his parental rights to one child. **AFFIRMED.**

Patricia Scheinost, Council Bluffs, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Marti Nerenstone, Council Bluffs, attorney and guardian ad litem for minor child.

Considered by Doyle, P.J., Schumacher, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**BLANE, Senior Judge.**

A father appeals the termination of his parental rights to a one-year-old daughter. The juvenile court found he failed to maintain significant and meaningful contact. We review child-welfare cases de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). The juvenile court's fact findings do not bind us, but we give them weight, particularly on credibility issues. *Id.* Our top concern is L.N.'s best interests. *See In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019).

L.N. came to the attention of the department of human services (DHS) at birth because her mother tested positive for illegal drugs. L.N. also tested positive at birth through urine and meconium testing for several illegal drugs. She was removed from the mother's care and placed with a foster parent who has been her sole caregiver ever since. At the time of her birth, the mother was married to someone other than L.N.'s biological father. The juvenile court eventually terminated the mother and the legal father's parental rights to L.N., but they do not appeal.[1] The mother identified the father, the appellant here, as a possible biological father, and paternity testing established the appellant as L.N.'s father[2] in October 2018.

In October 2019, seeing insufficient progress in case goals for the mother, father, and legal father, the State filed for termination of parental rights. It alleged termination of the father's relationship was appropriate under the statutory factors

---

[1] We note that the juvenile court ordered the termination of the legal father's parental rights. However, under *In re J.C.,* 857 N.W.2d 495 (Iowa 2014), once a biological father was determined, the legal father should have been dismissed as he was no longer a necessary party.

[2] We will refer to the biological father as the "father."

set out in Iowa Code section 232.116(1), paragraphs (e), (f), and (*l*) (2019).  But, because L.N. is not yet "four years of age or older," paragraph (f) does not apply.  The court also found the evidence was insufficient to support termination under paragraph (*l*).  It found the State proved the ground for termination under paragraph (e).  The father appeals.

**Significant and Meaningful Contact.**  The juvenile court may terminate parental rights under Iowa Code section 232.116(1)(e) if

> e. The court finds that all of the following have occurred:
> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.
> (3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so.

Proof of paragraphs (1) and (2) is not contested.  Significant and meaningful contact "includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent."  Iowa Code § 232.116(1)(e)(3).  In addition to financial obligations of parenthood, this duty "requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life."  *Id.*  These are efforts we find the father did not make in this case.

Although paternity was established in October 2018, the father was incarcerated in Nebraska until February 2019.  The father has a long history of

abusing illegal substances and committing acts of domestic violence against the mother. The juvenile court ordered him, upon release, to establish stable housing, remain free from drug and criminal activity, and establish stable employment.

After his February release, the father lived with his sister, but her home study was denied, so L.N. could not live with him there. The father never obtained stable employment and was unable to contribute financially to L.N.'s care during visitations. He obtained substance-abuse and mental-health evaluations—admitting to regular marijuana use—but never completed recommended treatment and never submitted to random drug screens as ordered. He perpetrated another domestic violence attack against the mother in July 2019. DHS and family safety, risk, and permanency (FSRP) workers described the father's engagement with services as minimal, and he returned to jail in August through September, then again in October.

The father claims he was overwhelmed by the responsibilities of following the case plan and trying to reintegrate into life after being released from incarceration. He also claims he was trying to focus on maintaining stable employment. While we empathize with the father's struggles, he was nonetheless unsuccessful in completing the responsibilities in the case plan and following court orders.

He was not much more successful in his efforts to establish a relationship with L.N. He first met her shortly after his February release from jail. But overall, he attended less than half of his offered visits. All visits were fully supervised and never progressed to semi or unsupervised. When he was incarcerated in August, visits stopped because the jail did not approve them when the FSRP worker

inquired. The last time the father saw L.N. was in June. A few weeks before the termination hearing in October, the father was in jail again on federal drug charges. He did not contact DHS or FSRP from jail but called the foster mother to check on L.N. Generally, FSRP observed him to interact appropriately with L.N. during visits. But his poor record of attendance at visitation and a general lack of contact with DHS and FSRP show he failed to make genuine efforts to maintain communication with L.N. and demonstrate continued interest in her over their short relationship. The record shows he has not established or maintained a place of importance in L.N.'s life with his sporadic visitation and occasional inquiries to the foster mother.

Based on the foregoing, we conclude the State showed the record supports by clear and convincing evidence the statutory ground for termination under paragraph (e).

**Best Interests of the Child.** The father next contends it was not in L.N.'s best interests to terminate his parental rights. He argues he was given very little time to prove himself a fit parent before termination. We give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* § 232.116(2). One factor we may consider is "whether the child has become integrated into the foster family to the extent that the child's familial identity is with the foster family, and whether the foster family is able and willing to permanently integrate the child into the foster family." *Id.* § 232.116(2)(b).

The father has not shown his ability to parent L.N. safely to any extent. He has not established stable housing or employment, demonstrated sobriety, avoided criminal activity, or established a bond with L.N. We understand the father has had a limited period of time to demonstrate his parenting, but L.N. has been out of parental care for almost her entire life, well over one year. Our child welfare statutes give parents "a limited time frame . . . to demonstrate their ability to be parents." *In re J.E.,* 723 N.W.2d 793, 800 (Iowa 2006). This is because "[t]he crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re D.A.*, 506 N.W.2d 478, 479 (Iowa Ct. App. 1993). We cannot deny L.N. permanency because the father has not yet demonstrated he can parent.

L.N. had a number of medical issues during her first year, but the father has never attended one of her doctor's appointments. The foster mother has been managing her care and treatment, and L.N. is now on track developmentally. Overall, L.N. appears to be well-integrated into her home with the foster mother, with whom she shares a bond. The foster mother has provided a safe and stable home for almost L.N.'s entire life. The foster mother is also willing to adopt L.N.

The record is clear and convincing that L.N.'s best interests are served by severing her legal relationship with the father and allowing her to achieve permanency through adoption.

**Reasonable Efforts.** Finally, the father complains the DHS failed to make reasonable efforts to reunite him with L.N. Iowa Code section 232.102(9) requires the DHS "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." Parents whose

children have been removed from their care have a duty to ask for other services *before* the termination hearing. *See In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017). The parent must identify and demand additional services if they feel DHS's efforts have been inadequate. *In re L.M.W.*, 518 N.W.2d 804, 807 (Iowa Ct. App. 1994). A parent who fails to do so waives the issue and cannot raise it at the termination hearing or on appeal. *See In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999).

In each of its orders during the child-in-need-of-assistance case, the juvenile court determined the DHS had made reasonable efforts for the parents with no challenge from the father. The father tried to raise a reasonable-efforts argument at the termination hearing but was unable to do so as he had not challenged any effort before. Again, he may not do so on appeal.

In addition, the father's petition on appeal does not identify any service he felt was inadequate or any additional service DHS could have provided that would have improved his position. We deem the issue waived. But we also note that DHS and FSRP described the father's engagement with services as minimal, despite their continued attempts to maintain contact. And during each of his incarcerations, DHS attended to all the items on an incarcerated parent checklist, including pursuing visitation so long as the facility's policy would permit it.

Seeing no grounds for reversal, we affirm the termination of the father's parental rights.

**AFFIRMED.**