# IN THE COURT OF APPEALS OF IOWA

No. 20-0924
Filed September 23, 2020

**IN THE INTEREST OF L.D.,**
**Minor Child,**

**S.S., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Appanoose County, William Owens,

Associate Juvenile Judge.


        A mother appeals the termination of parental rights to her son.  **AFFIRMED**.


        Monte McCoy, Centerville, for appellant mother.

        Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee State.

        Amanda Demichelis of Demichelis Law Firm, PC, Chariton, for intervenors.

        Debra A. George, Centerville, attorney and guardian ad litem for minor

childr.


        Considered by Vaitheswaran, P.J., Schumacher, J., and Scott, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2020).

**SCHUMACHER, Judge.**

A mother appeals the termination of her parental rights to her son. She argues she should have been afforded additional time for reunification efforts and that a guardianship was the preferred permanency option over termination.

## I. Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). We are not bound by the juvenile court's findings of fact. *Id.* But we give them weight, especially in assessing witness credibility. *Id.* Fundamental to all levels of review is our foremost attention to the child's best interests. *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014).

## II. Facts and Procedural History

L.D. is a four-year-old non-verbal male with a diagnosis of Trisomy 21 Downs Syndrome. The Iowa Department of Human Services (DHS) became involved with L.D. when he tested positive at birth in March 2016 for illegal substances. L.D. again became involved with DHS in November 2017 when his father physically removed L.D. from L.D.'s home after striking the mother's boyfriend with the butt of a gun and firing a shot into the ceiling of the home while holding L.D. As a result, L.D.'s father was convicted of willful injury causing a bodily injury and child endangerment. Subsequently, he was convicted of murder in the first degree on February 15, 2019, and was sentenced to life imprisonment on March 18, 2019. L.D.'s father does not appeal the termination of his parental rights.

L.D.'s mother was arrested on March 11, 2019, for possession of a controlled substance with intent to deliver. L.D.'s mother was very thin with sores

on her face and arms. She admitted to using methamphetamine once a week for the previous year and smoking marijuana on a regular basis. Her ongoing use of methamphetamine and marijuana use was confirmed through hair stat-samples.

L.D. was adjudicated a child in need of assistance (CINA) pursuant to Iowa Code section 232.2(6)(c)(2) and (n) (2019) on May 23, 2019, and legal custody of L.D. was placed with his paternal grandparents, with a dispositional order entered on January 17, 2020. Following disposition, legal custody of L.D. remained with his paternal grandparents. At the conclusion of a permanency hearing in April, the juvenile court directed the initiation of termination proceedings.

During the course of the underlying CINA case, the mother entered inpatient treatment on two occasions, only to leave within days against medical advice each time. She continued to test positive for methamphetamine throughout the life of the CINA case and was discharged from mental-health treatment for excessive absenteeism. While she did well during her two-hour supervised visits, she missed sixteen of those visits in 2019 and missed ten visits in 2020.[1] At the time of the termination hearing, she had unresolved felony drug charges, unresolved substance-abuse issues, and unresolved mental-health issues.

## III. Legal Analysis

The juvenile court terminated the mother's parental rights on June 25, 2020, pursuant to Iowa Code section 232.116(1)(f) (2020). Section 232.116(1)(f) provides that termination may be ordered when there is clear and convincing evidence the child is four years of age or older, has been adjudicated a CINA, has

---

[1] Beginning in March 2020, the visits were held by video due to the COVID-19 pandemic.

been removed from the parent's custody for at least twelve of the last eighteen months, and cannot be returned to the parent's custody at the time of the termination hearing. The mother does not challenge the statutory grounds relied on by the juvenile court. *See In re P.L.,* 778 N.W.2d 33, 40 (Iowa 2010) (stating that where parent does not challenge the existence of statutory grounds, we need not address the issue). Consequently, we affirm the ground relied on by the juvenile court for termination.

While not challenging the statutory ground for termination, the mother argues the juvenile court should have provided additional time for reunifciation efforts. Under Iowa Code section 232.104(2)(b), a court may refrain from terminating a parent-child relationship and continue the current placement of the child for an additional six months if it determines "that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." In order to grant such an extension, the court must be able to "enumerate the specific factors, conditions, or expected behavioral changes," providing the basis for its decision. Iowa Code § 232.104(2)(b).

In our de novo review, we cannot find the need for removal will no longer exist at the end of a six-month period, and we, therefore, agree with the juvenile court's decision to refrain from granting a six-month extension. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 40; *accord In re D.A.*, 506 N.W.2d 478, 479 (Iowa Ct. App. 1993) ("The crucial days of childhood cannot be suspended while parents experiment with

ways to face up to their own problems."). As noted by the juvenile court, L.D.'s mother was in no better position at the time of the termination hearing to resume custody of L.D. than at the time of the initial removal.

We turn to the mother's request for the establishment of a guardianship in the paternal grandparents. We begin with the principle that "a guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018) (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)). Although section 232.104(2)(d) allows for the establishment of a guardianship as a permanency option, section 232.104(3) requires "a judicial determination that [such a] planned permanent living arrangement is the best permanency plan for the child." *See B.T.,* 894 N.W.2d at 32–33. Determining the best permanency plan for a child is a best-interests assessment. *See id.* at 33.

Although a guardianship may provide some permanency, it does not necessarily provide stability for the child. "So long as a parent's rights remain intact, the parent can challenge the guardianship and seek return of the child to the parent's custody." *In re R.S.R.*, No. 10-1858, 2011 WL 441680, at *4 (Iowa Ct. App. Feb. 9, 2011). Termination and adoption are the preferred solution when a parent is unable to regain custody within the time frames of chapter 232. *See In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997) ("An appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child."). Additionally, both the guardian ad litem and DHS recommended termination of the mother's parental rights. "It is significant to us that neither the third-party service providers nor the [guardian ad litem] believed [the child] could be safely returned to her parent[ ] at the time of

trial." *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014); *accord A.S.*, 906 N.W.2d at 476 (rejecting a request to establish a guardianship and noting the case manager and guardian ad litem recommended termination of parental rights).

The mother argues this case is analogous to *B.T.*, 894 N.W.2d at 32. We disagree. In the referenced case, the court concluded a guardianship for an older child with the maternal grandmother was preferable to termination of the mother's parental rights where the mother and child shared a close bond; the mother had substance-abuse issues but had also had many years of sobriety. *See B.T.*, 894 N.W.2d at 34.

In the instant case, L.D. is only four years old, and his mother has made no progress in her treatment goals. L.D. has been out of his mother's custody for over a year. Given the age of the child, his special needs, and the lack of progress of the mother after over a year of services, we, like the juvenile court, find that a guardianship is not a preferred permanency option over termination of parental rights. L.D.'s young chaotic life cries out for permanency, which can only be accomplished under these facts by termination of the mother's parental rights. The termination of his mother's parental rights is in L.D.'s best interest.

## IV. Conclusion

We agree that the facts of this case do not support a finding that an additional six months will result in removal from parental custody no longer being necessary. We further agree a guardianship is not the preferred permanency option for L.D. We affirm the order of the juvenile court terminating the mother's parental rights to L.D.

**AFFIRMED.**